David Galaway TREACY, Appellant,

v.

MUNICIPALITY OF ANCHORAGE, Appellee.

Municipality of Anchorage, Appellant,

v.

Sam Williford, Tara Riordan, Individually and as mother of and next friend to Brenna Randall Riordan, a minor under the age of eighteen (18), Steve and Ann Treacy, individually and as parents of and next friends to David Treacy, a minor under the age of eighteen (18), Appellees.

Nos. S–9800, S–10149.

Supreme Court of Alaska.

May 14, 2004.

Mark Rindner, Lane Powell Spears Lubersky LLP, Anchorage, for Appellant David Galaway Treacy.

Hugh W. Fleischer, Law Offices of Hugh W. Fleischer, Anchorage, for Appellees Sam Williford, Tara Riordan, and Steve and Ann Treacy.

Patricia Huna–Jines, Assistant Municipal Attorney, and William A. Greene, Municipal Attorney, Anchorage, for Appellant (S–10149) and Appellee (S–9800) Municipality of Anchorage.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

1. 11 F.3d 488 (5th Cir.1993).

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This consolidated appeal challenges the juvenile curfew ordinance enacted by the Municipality of Anchorage. In one case, David Treacy appeals from a hearing officer's finding that he violated the ordinance and that the ordinance is constitutional. In a separate case, the Municipality of Anchorage appeals from a superior court determination that the ordinance is unconstitutional. We conclude that the municipality has a compelling interest in protecting juveniles and curbing juvenile crime, and that there is a sufficient connection between the government's interests and the classifications it has chosen to achieve them. For the purpose of this facial review of the ordinance's constitutionality, we also conclude that Anchorage used the least restrictive alternative available. We therefore uphold the ordinance against the claim that it is unconstitutional on its face.

## II. FACTS AND PROCEEDINGS

### A. The Anchorage Ordinance

The Anchorage Police Department recorded a sixty-two percent increase in the number of juvenile arrests between 1990 and 1994. Because of this increase, the Municipality of Anchorage began to take many proactive steps to curb juvenile crime, one of which was to strengthen the municipality's juvenile curfew law.

The Anchorage Municipal Assembly researched the curfew issue by reviewing other cities' curfew laws and recent court decisions regarding curfews. Concerned with the constitutionality of the existing ordinance, the Anchorage Municipal Assembly chose to fashion its new law after an ordinance that had recently been upheld by the Fifth Circuit Court of Appeals in the case of *Qutb v. Strauss*.[1]

On October 10, 1995 the Anchorage Municipal Assembly held a public hearing to discuss repeal of the existing curfew law and re-enactment of a more comprehensive one. The assembly heard testimony from a wide

spectrum of speakers, and it considered recent crime statistics which indicated an increase in juvenile arrests for both violent crimes and property crimes.

2. The amended and renumbered ordinance (with 1998 additions underlined) reads as follows:

**8.75.060  Minors: curfew.**

A. *Definitions.* The following words, terms and phrases, when used in this section, shall have the meanings ascribed to them in this subsection, except where the context clearly indicates a different meaning:

*Curfew hours* means:

1. September through May:
   a. 11:00 p.m. on any Sunday, Monday, Tuesday, Wednesday, or Thursday until 5:00 a.m. of the following day; and
   b. 1:00 a.m. on any Saturday and Sunday until 5:00 a.m. of the same day.
2. June through August: 1:00 a.m. on any day until 5:00 a.m. of the same day.

*Emergency* means an unforeseen combination of circumstances or the resulting state that calls for immediate action. The term includes, but is not limited to, a fire, natural disaster, automobile accident, or any situation requiring immediate action to prevent serious bodily injury or loss of life.

*Establishment* means any privately-owned place of business operated for a profit to which the public is invited, including but not limited to any place of amusement or entertainment.

*Guardian* means:

1. A person who, under court order, is the guardian of the minor; or
2. A public or private agency with whom a minor has been placed by a court.

*Knowingly* means, with respect to a conduct or to a circumstance described by a provision of law defining an offense, that a person is aware that his or her conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist.

*Minor* means any person under the age of 18 years.

*Operator* means any individual, firm, association, partnership, or corporation operating, managing, or conducting any establishment. The term includes the members or partners of an association or partnership and the officers of a corporation.

*Parent* means a person who is:

1. A natural parent, adoptive parent, or step-parent of another person; or
2. At least 18 years of age and authorized by a parent or guardian to have the care and custody of a minor.

*Public place* means any place to which the public or a substantial group of the public has access, and includes but is not limited to streets, highways, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

*Remain* means to:

1. Linger or stay; or
2. Fail to leave the premises when requested to do so by a police officer or the owner, operator, or other person in control of the premises.

*Serious bodily injury* means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

B. *Offenses.*

1. A minor commits an offense if he or she remains in any public place or on the premises of any establishment within the municipality during curfew hours.
2. A parent or guardian of a minor commits an offense if he or she knowingly permits, or by insufficient control allows, the minor to remain in any public place or on the premises of any establishment within the municipality during curfew hours in violation of this section.
   a. Indifference as to the activities or whereabouts of the minor shall be prima facie evidence of insufficient control.
3. The owner, operator, or any employee of an establishment commits an offense if he or she knowingly allows a minor to remain upon the premises of the establishment during curfew hours.

C. *Exceptions.*

1. It is an exception to prosecution under subsections B.1. and B.2. of this section if the minor was:
   a. Accompanied by his or her parent or guardian;
   b. On an errand at the written direction of his or her parent or guardian without any detour or stop (written direction must be signed, timed, and dated by the parent or guardian and must indicate the specific errand);
   c. Involved in an emergency;
   d. Engaged in an employment activity, or going to or returning from an employment activity, without detour or stop;
   e. On the public right-of-way immediately abutting the minor's residence or immediately abutting the residence of a next-door neighbor, if the neighbor did not complain to the police department about the minor's presence;
   f. Attending, or going to or returning home from, without any detour or stop,

under eighteen years of age, except for those emancipated or married, are banned from remaining in a public place or on the premises of an establishment during curfew hours. Curfew hours vary by season. From September to May the curfew hours are between 11:00 p.m. on weekdays and 1:00 a.m. on weekends through 5:00 a.m. During the summer months of June, July, and August the curfew hours are between 1:00 a.m. and 5:00 a.m. every day.

Under the curfew law as it existed at all times relevant to this appeal, a parent,[3] guardian, or owner of an establishment can also be held liable for the actions of a minor who violates the curfew if the parent, guardian, or owner knowingly permits or, by insufficient control, allows the minor to remain in a public place during curfew hours. The ordinance has many exceptions to enforcement, including, among others, employment, attendance at official school or religious activities, errands approved by parents, and activities protected by the First Amendment.[4]

## B. *Treacy v. Municipality of Anchorage*

### 1. Facts

On January 9, 1999 at approximately 1:35 a.m., Anchorage Police Officer Kevin Armstrong observed a vehicle make an illegal U-turn. He stopped the vehicle and spoke with the individuals inside, one of whom was David Treacy. Officer Armstrong checked the occupants' identification cards and discovered that Treacy was seventeen years old. Officer Armstrong also discovered that Treacy had been cited previously for violating the curfew ordinance. Officer Armstrong issued Treacy a $300 citation for a second offense under the ordinance. Before issuing the citation, Officer Armstrong attempted to determine if Treacy came within any exceptions under the ordinance, but determined that he did not.

Upon receiving the citation, Treacy handed Officer Armstrong a business card that stated:

*Curfew Release*

I am exercising my

**First Amendment Rights!**

This individual is exempt from prosecution under the Anchorage Curfew Law, as he/she is in full compliance with AO 95–195(1)(C)(1)(g).

After reading the card, Officer Armstrong told Treacy that he could challenge the citation before a hearing officer who would determine the validity of his First Amendment defense.

### 2. Proceedings

On March 10 a hearing was held regarding the curfew citation issued to Treacy. Treacy did not attend the hearing; however, his father, Stephen Treacy, was in attendance and Treacy was represented by counsel. Officer Armstrong was the only witness. In a written decision issued on April 21 the hearing officer found that the ordinance was constitutional and that Treacy had violated it on the night of January 9.

Treacy then appealed to the superior court. Superior Court Judge Karen L. Hunt

---

an official school, religious, or other recreational activity supervised by adults and sponsored by the municipality, Anchorage school district, a civic organization, or another similar entity that takes responsibility for the minor;

g. Exercising First Amendment rights protected by the United States Constitution, such as the free exercise of religion, freedom of speech, and the right of assembly; or

h. Married or had disabilities of minority removed in accordance with AS 9.55.540.

2. It is an exception to prosecution under subsection B.3 of this section that the owner, operator, or employee of an establishment promptly notified the police department that a minor was present on the premises of the establishment during curfew hours and refused to leave.

D. Violation of this section shall be punished by a fine of not more than $300.00.

E. As an alternative to the remedies, procedures and penalties provided in this Title and section 1.45.010, a violation of this section may be charged as a civil violation subject to and prosecuted in accordance with Title 14 and in such case shall be punishable by a civil penalty in accordance with chapter 14.60.

3. Subsequent amendment of the ordinance removed parental liability. *See* AMC 8.75.060(B) (2003).

4. AMC 8.75.060(C)(1) (1998).

found the ordinance to be constitutional. Judge Hunt also affirmed the hearing officer's determination that Treacy had violated the ordinance and that no competent evidence established that he had been exercising a First Amendment right.

Treacy now appeals Judge Hunt's order. Treacy, as well as his parents, are also named parties in the accompanying case involving Sam Williford.

## C. *Municipality of Anchorage v. Williford, et al.*

### 1. Facts

#### a. Williford

The circumstances under which Williford was cited for violating the ordinance [5] are in dispute. According to the citation, during curfew hours on August 15, 1996, Williford, a minor, was in the parking lot at the Willowcrest School in a vehicle with a friend. Police Officer Kevin Mitchell, who was at the school investigating potential vandalism, noticed Williford's vehicle enter the lot.

Williford contends that, on the night in question, he was spending the night at a friend's house. While at his friend's house, Williford claims that he began to experience pain related to a chronic intestinal disease. He telephoned his mother who told him to come home. Williford claims he was traveling home when he was pulled over by Officer Mitchell. The officer called Williford's mother and she explained that Williford was returning home because of his intestinal problem. But when he was pulled over, Williford told the officer that he stopped because he was experiencing an asthma attack, not an upset stomach. Because the officer noticed that Williford showed no signs of an asthma attack, did not have an inhaler, and showed no sign of being in a hurry to go home, Williford was cited for a curfew violation.

At the hearing on the citation, Williford and his mother defended on the grounds "that the defendant and his friend were at a friend's house when he began having an asthma attack." The hearing officer was not persuaded by this claim, relying on Officer Mitchell's testimony that Williford "showed no signs of distress, there was no sign of an inhaler and defendant showed no urgency about getting home." Based on the hearing officer's findings, Williford was cited for violating the ordinance and he received a fine.

#### b. Riordan

On February 22, 1998 Brenna Riordan, a minor, was a passenger in a car driven by a friend over the age of eighteen. Brenna was traveling from her friend's home to her home during curfew ·hours. The vehicle was stopped by an Anchorage police officer after it crossed the center line. After discovering Brenna's age, the officer telephoned Brenna's mother, Tara Riordan. Tara explained that Brenna had her permission to be out during curfew hours. Nonetheless, the officer cited Brenna for violating the ordinance. The hearing officer upheld the citation.

### 2. Proceedings

On June 9, 2000 Williford, the Riordans, and the Treacys (collectively "the plaintiffs") filed a complaint in the superior court for declaratory relief, claiming that the ordinance is unconstitutional and seeking to permanently enjoin Anchorage from further enforcement of the law. Following amendment of the complaint, the plaintiffs moved for summary judgment. Anchorage opposed the motion and cross-moved for summary judgment.

Superior Court Judge Rene J. Gonzalez issued a decision and order in March 2001 granting the plaintiffs' motion for summary judgment and denying Anchorage's cross-motion. He found the ordinance unconstitutional. Judge Gonzalez determined that strict scrutiny was the appropriate standard to examine the ordinance's constitutionality. While he determined that Anchorage had a compelling interest in promulgating the ordinance, he also concluded that the municipality did not use the least restrictive means to achieve its goal. Accordingly, Judge Gonzalez determined that the ordinance was not narrowly tailored to achieve its interest and, thus, that the ordinance was unconstitutional.

Anchorage appeals.

---

5. Because Sam Williford was found in violation of the ordinance in 1996, we assume he was cited under the version of the curfew ordinance in effect at that time, AMC 8.05.440 (1995).

## D. Consolidation

Anchorage moved this court to consolidate Treacy's appeal with its own. No objections were filed and we granted the motion.

## III. STANDARD OF REVIEW

■ In an administrative appeal, where the superior court acts as an intermediate appellate court, we directly review the agency action in question.[6] "As we substitute our judgment, it is our duty 'to adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'"[7] We review the factual findings made by an administrative agency using the substantial evidence test.[8] Substantial evidence to support an agency decision exists when there is " 'such relevant evidence as a reasonable mind might accept as adequate to support the conclusion.'"[9]

■ We review grants of summary judgment *de novo* and affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[10] We review constitutional questions using our independent judgment, again adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[11]

**6.** *See N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

**7.** *Cook Inlet Pipe Line Co. v. Alaska Pub. Utils. Comm'n*, 836 P.2d 343, 348 (Alaska 1992) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**8.** *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998).

**9.** *Bouse v. Fireman's Fund Ins. Co.*, 932 P.2d 222, 231 (Alaska 1997) (quoting *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1046 (Alaska 1978)).

**10.** *Municipality of Anchorage v. Repasky*, 34 P.3d 302, 305 (Alaska 2001).

**11.** *Chiropractors for Justice v. State*, 895 P.2d 962, 966 (Alaska 1995).

**12.** *Kodiak Island Borough v. Mahoney*, 71 P.3d 896, 899–900 (Alaska 2003); *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 35 (Alaska 1980).

## IV. DISCUSSION

### A. Constitutionality of the Ordinance

■ In addition to challenging the ordinance as unconstitutionally void for vagueness, the plaintiffs claim that the ordinance violates a number of fundamental rights. Included in the plaintiffs' claim are the right to equal protection of the laws, the right of parents to raise their children, the right to travel, the right to privacy, and the rights to freedom of expression and association. A duly enacted law or rule, including a municipal ordinance, is presumed to be constitutional.[12] Courts should construe enactments to avoid a finding of unconstitutionality to the extent possible.[13] This is particularly so in a case like this: a facial challenge as opposed to a challenge to the ordinance as applied.[14] We next address whether the ordinance is void for vagueness or unconstitutional upon its face.

**1. The ordinance is not void for vagueness because it is phrased with sufficient clarity so that ordinary people can understand what conduct is prohibited.**

■ "As generally stated, the void-for-vagueness doctrine requires that a penal

**13.** *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001).

**14.** In deciding a facial challenge to a statute on procedural due process grounds, we have held that the challenged act would be invalid on its face only if "no set of circumstances exists under which the Act would be valid." *Javed v. Dep't of Pub. Safety, Div. of Motor Vehicles*, 921 P.2d 620, 625 (Alaska 1996). In a later case involving the right to privacy, however, we emphasized that *Javed's* " 'no set of circumstances' language is not a rigid requirement." *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 35 (Alaska 2001). Yet even under a relaxed standard of facial review it would be improper to declare Anchorage's ordinance invalid on its face if it has a "plainly legitimate sweep." *See Troxel v. Granville*, 530 U.S. 57, 85 & n. 6, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Stevens, J., dissenting). For purposes of deciding this case, our opinion assumes that this lenient standard applies to our facial review of the curfew ordinance, concluding that, despite any occasional problems it might create in its application to specific cases, the ordinance has a plainly legitimate sweep.

statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[15]

■ The plaintiffs argue that the ordinance contains words which are not sufficiently defined so that an ordinary person is put on notice as to what conduct is prohibited. Anchorage contends each word is sufficiently defined. We agree with the municipality.

### a. "remain"

Under the Anchorage Municipal Code, a minor commits an offense if he or she remains in any public place or on the premises of any establishment within the municipality during curfew hours.[16] The plaintiffs claim that the operative word, "remain," is vague because someone in a moving automobile must be characterized as lingering or staying in order to find a violation. They assert that the Ninth Circuit came to the same conclusion in *Nunez ex rel. Nunez v. City of San Diego*[17] when faced with an ordinance's use of the words "loiter, idle, wander, stroll or play."[18] But the language used in the San Diego ordinance struck down in *Nunez*—"loiter, idle, wander, stroll or play"—and the ordinance's lack of meaningful exceptions to enforcement make it wholly different from the ordinance at issue in this case. The juvenile curfew ordinance struck down in *Nunez* was enacted in 1947 and made it unlawful for a minor to "loiter, idle, wander, stroll or play" in public during nighttime hours.[19] The ordinance allowed for only four limited exceptions.[20] The Ninth Circuit held that the phrase "loiter, wander, idle, stroll or play" was unconstitutionally vague and in-

stead construed the ordinance as prohibiting minors' presence in public during curfew hours.[21] The court ultimately struck down the ordinance because it lacked exceptions sufficient to protect the constitutional rights of minors and their parents.[22] As we discuss in the sections that follow, we find that the exceptions to enforcement of the Anchorage ordinance are sufficient to withstand a facial challenge. *Nunez* is, therefore, inapposite.

The plaintiffs also rely on *Brown v. Municipality of Anchorage*[23] to support their argument that "remain" is vague. *Brown* is also inapplicable as it is a loitering case. Here, the violation comes not from loitering, but because juveniles are in public places during curfew hours. To analogize to *Brown*, the ordinance at issue would have to prohibit juveniles from loitering at any time, not only during curfew hours.

The use of the word "remain" presents no vagueness problem. It has been used in other curfew ordinances[24] and upheld after challenge.[25] The plaintiffs do not provide sufficient reason to conclude that it is incapable of being understood by ordinary people. The Anchorage ordinance makes it an offense for a minor to remain in a public place or on the premises of an establishment during curfew hours. The import of this prohibition is that minors must be at home during curfew hours unless they qualify for an exception, to which we turn next.

The ordinance contains several exceptions to prosecution under specified circumstances. For example, a minor will not be prosecuted under the ordinance if he or she is: accompanied by a parent or guardian, on an errand at the written instruction of a parent or guardian, involved in an emergency, at work, im-

---

**15.** *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

**16.** AMC 8.75.60(b)(1).

**17.** 114 F.3d 935 (9th Cir.1997).

**18.** *Id.* at 940–41.

**19.** *Id.*

**20.** *Id.* at 938–39.

**21.** *Id.* at 943–44.

**22.** *Id.* at 949, 951–52.

**23.** 584 P.2d 35 (Alaska 1978).

**24.** *See, e.g., Qutb v. Strauss,* 11 F.3d 488, 497 (5th Cir.1993); *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242, 1252 (M.D.Pa.1975) *aff'd,* 535 F.2d 1245 (3d Cir.1976).

**25.** *Qutb,* 11 F.3d at 497; *Bykofsky,* 401 F.Supp. at 1252.

mediately outside of his or her own home, attending a supervised activity, exercising First Amendment rights, or either married or an emancipated minor.[26] The plaintiffs attack four of these exceptions as impermissibly vague.

### b. the emergency exception

The ordinance provides an exception to prosecution "if the minor was involved in an emergency."[27] The plaintiffs claim that this exception is vague because the ordinance defines an emergency as "an unforeseen combination of circumstances or the resulting state that calls for immediate action,"[28] which it further specifies as including, but not limited to, "a fire, natural disaster, automobile accident, or any situation requiring immediate action to prevent serious bodily injury or loss of life."[29] The plaintiffs argue that while the first statement could lead one to believe that forgetting a book at the library constitutes an emergency, the second implies that the situation must be dire. Such a contradiction, they claim, makes the exception vague.

Anchorage correctly notes that similar emergency exceptions have been upheld in other jurisdictions. In *Hutchins v. District of Columbia*,[30] the court found a similar argument to border on the frivolous.[31] In fact, it is most likely because the term "emergency" might connote so many different possibilities that the word is further defined to provide specific examples of what could constitute an emergency under the statute. Because the emergency exception adequately provides notice of what could constitute an emergency under the ordinance, it is not impermissibly vague.

### c. the sponsored event exception

The ordinance also provides an exception for events sponsored by "the Munici-

pality of Anchorage, Anchorage School District, a civic organization, or another similar entity that takes responsibility for the minor."[32] The plaintiffs contend that this provision is vague because the ordinance does not specify what sort of entity is "similar to a civic organization" or what it means for such an organization to take "responsibility for the minor."

The court in *Hutchins* addressed a similar vagueness challenge. The *Hutchins* court found that although the challenged terms might be imprecise, they were not so ambiguous as to affect the curfew ordinance's constitutionality.[33] "In this context, the addition of 'civic organization, or other similar entity' simply includes within the defense the general class of organizations that may be thought analogous to schools, religious organizations, or governmental entities."[34] We agree with this analysis.

While "another similar entity" and "taking responsibility for the minor" may not specifically define this exception, the context of the sponsored event exception indicates what sort of activities and events qualify: The activity must be formally authorized, supervised by adults, and sponsored by an organization. Formally authorized, supervised, all-night graduation activities would be covered; a private, all-night graduation party without parental supervision would not. Similarly, a meeting sponsored by the American Civil Liberties Union or the Anchorage School District and supervised by adults to discuss the impact of the curfew on minors' legal rights would be protected under this exception, whereas an informal gathering of students at a coffee shop to discuss the curfew would not be covered under the sponsored event exception.[35]

---

26. AMC 8.75.060(C)(1).

27. AMC 8.75.060(C)(1)(c) (1998).

28. AMC 8.75.060(A) (1998).

29. *Id.*

30. 188 F.3d 531 (D.C.Cir.1999).

31. *Id.* at 547.

32. AMC 8.75.060(C)(1)(f) (1998).

33. *Hutchins,* 188 F.3d at 547.

34. *Id.*

35. We pass no judgment on whether such a meeting might be included within the First Amendment exception. AMC 8.75.060(C)(1)(g).

Because the sponsored event exception is sufficiently understandable, this provision is not void for vagueness.

### d. the sidewalk exception

■ Under the ordinance, a minor may remain outside of his or her home during curfew hours if he or she is on the public right-of-way immediately abutting the minor's residence or that of a next-door neighbor, if the neighbor did not complain to the police department about the minor's presence.[36] The plaintiffs complain that the sidewalk exception is impermissibly vague because it grants neighbors "standardless discretion" to declare a minor in violation of the curfew without reason. Such a provision, they argue, is similar to the ordinance struck down as void for vagueness in *Coates v. City of Cincinnati.*[37]

The Anchorage ordinance, however, is not comparable to that in *Coates.* There, the ordinance allowed police to criminalize conduct they found "annoying."[38] The term "annoying" was what the court found vague because it provided no standard for proscribed conduct.[39] The ordinance here does not use such language. Rather, it allows minors to remain on the public right-of-way adjacent to their own homes and to remain on the public right-of-way immediately next to the residence of a next-door neighbor unless the neighbor complains to the police department. The fact that a neighbor has discretion to complain to the police poses no vagueness problem, because as the D.C. Circuit stated in *Hutchins,* "[i]t is irrelevant, for purposes of evaluating vagueness, that a neighbor has 'discretion' to call the police if a juvenile remains on the neighbor's sidewalk during curfew hours—the discretion exercised in this situation is analogous to that exercised by property owners under trespass

laws."[40] The plaintiffs' argument also fails because it is not the neighbor who issues the citation, but local law enforcement. That the neighbor makes a complaint simply means the minor has no defense under this exception. The minor may still remain outside if another exception applies. Moreover, contrary to the situation in *Coates,* a minor who remains on the sidewalk in front of the minor's *own* home would face no threat of prosecution. Because the sidewalk exception is sufficiently clear and does not give undue discretion to neighbors to implement the ordinance, the provision is not vague.

### e. the First Amendment exception

■ Finally, the ordinance also excepts from prosecution minors who are engaged in protected First Amendment activity, such as the free exercise of religion, freedom of speech, or the right of assembly.[41] The plaintiffs claim that the First Amendment exception is vague. They argue that there is no way for a minor or a police officer to determine what activities are protected; therefore, the ordinance fails to put the public on notice as to what activities are prohibited. This vagueness, they argue, renders the exception meaningless unless both the officer and the minor are constitutional scholars. The exception is also meaningless, they claim, as it merely restates the obvious, i.e., that the law cannot bar constitutionally protected activities. They argue that, because the exception fails to state what those activities are, it allows rights to be infringed while the matter is sorted out in court. We reject these claims.

In *Ramos ex rel. Ramos v. Town of Vernon,*[42] a similar First Amendment exception was upheld, even though it lacked examples of protected activity[43] such as are included in

---

**36.** AMC 8.75.060(C)(1)(e).

**37.** 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

**38.** *Id.* at 612 n. 1, 91 S.Ct. 1686.

**39.** *Id.* at 614, 91 S.Ct. 1686.

**40.** *Hutchins v. Dist. of Columbia,* 188 F.3d 531, 547 (D.C.Cir.1999).

**41.** AMC 8.75.060(C)(1)(g).

**42.** 48 F.Supp.2d 176 (D.Conn.1999), *rev'd on other grounds, Ramos v. Town of Vernon,* 353 F.3d 171 (2d Cir.2003).

**43.** *Id.* at 182.

the ordinance at issue in this case.[44] The *Ramos* court stated that "[t]he basic protections of the First Amendment are ones that ordinary citizens know and comprehend. Thus, this exception provides citizens with sufficient notice of the type of activity that falls within the exception."[45] And, as the Fourth Circuit found in *Schleifer ex rel. Schleifer v. City of Charlottesville:*[46]

> The First Amendment exception provides adequate notice to citizens. It is perfectly clear that core First Amendment activities such as political protest and religious worship after midnight would be protected. It is equally clear that rollerblading would not. Between these poles may lie marginal cases, which can be taken as they come.[47]

We conclude that, on its face, the ordinance does not violate the First Amendment. In so holding, we do not close the door to a future argument that the ordinance as applied in specific circumstances may violate an individual's rights under the First Amendment.

**2. The ordinance does not violate constitutional guarantees of equal protection.**

■■■ The Equal Protection Clause of the Fourteenth Amendment is essentially a directive that "all persons similarly situated should be treated alike."[48] "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."[49] But if a classification impinges a fundamental right or disadvantages a suspect class,[50] the ordinance is subject to strict scrutiny.[51]

The plaintiffs claim the ordinance makes two impermissible classifications calling for disparate treatment of citizens. First, they claim the ordinance treats persons under the age of eighteen differently from those over the age of eighteen. Second, they allege the ordinance treats single or unemancipated minors differently from those who are married or emancipated. We consider first whether the rights at issue are fundamental, and then whether the fact that minors are involved affects the level of scrutiny to be applied.

**a. fundamental right**

■■■ There is no question that the rights at issue in this case—the rights to move about, to privacy, to speak—are fundamental. But Anchorage argues that we should apply an intermediate level of scrutiny because the rights of children are not accorded the same level of protection as those of adults. Before discussing the level of scrutiny applicable to this case, we briefly address the nature of the right to move about. The federal courts have generally acknowledged a right to travel without defining its precise contours. For example, the United States Supreme Court has said: "Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty" protected by the Fourteenth Amendment to the United States Constitution.[52] "Indeed, it is apparent that

---

44. AMC 8.75.060(C)(1)(g) (1998).

45. *Ramos*, 48 F.Supp.2d at 182, *rev'd on other grounds, Ramos v. Town of Vernon*, 353 F.3d 171 (2d Cir.2003); *see also* Adam W. Poff, *A Tale of Two Curfews (And One City): What do Two Washington, D.C. Juvenile Curfews Say About the Constitutional Interpretations of District of Columbia Courts and the Confusion Over Juvenile Curfews Everywhere?*, 46 Vill. L.Rev. 277, 291–92 (2001) (discussing exceptions for First Amendment activities, similar to ordinance at issue here, that were upheld after legal challenge).

46. 159 F.3d 843 (4th Cir.1998).

47. *Id.* at 854.

48. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313

(1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

49. *Id.*

50. Age is not a suspect class. *Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Therefore, the plaintiffs claim strict scrutiny is applicable solely on the basis that fundamental rights are at stake.

51. *Plyler*, 457 U.S. at 216–17, 102 S.Ct. 2382; *Valley Hosp. Ass'n, Inc. v. Mat–Su Coalition for Choice*, 948 P.2d 963, 971 (Alaska 1997).

52. *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900). *See also Hutchins v. Dist. of Columbia*, 188 F.3d 531, 536–39

an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage...."[53] Like the federal courts, we have also recognized a right both to interstate and intrastate travel.[54] Accordingly, we assume that the right to intrastate travel is fundamental, but we do not address its scope.[55]

### b. level of scrutiny

■■■ The plaintiffs contend that, because fundamental rights are implicated, strict scrutiny is the appropriate level of review for this equal protection claim. Anchorage contends that intermediate scrutiny should apply because the rights of children are not coextensive with those of adults and are entitled to less protection.

In *Bellotti v. Baird*,[56] the Supreme Court "recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing."[57] Anchorage contends that, because *Bellotti* "limits" children's rights, intermediate scrutiny is the applicable standard. We reject this view.

We have previously applied strict scrutiny to review the constitutionality of laws that infringe upon the fundamental rights of minors. In *State v. Planned Parenthood of Alaska*,[58] we held that a minor's right to privacy was "deserving of the most exacting scrutiny."[59] While that case addressed a minor's right to an abortion, we will not create a false dichotomy by classifying some fundamental rights as more deserving of protection than others. Accordingly, we reject the municipality's argument that intermediate scrutiny should apply.[60]

Instead, we agree with the Ninth Circuit, which stated in *Nunez*, "[t]he *Bellotti* test does not establish a lower level of scrutiny for the constitutional rights of minors in the context of a juvenile curfew. Rather, the *Bellotti* framework enables courts to determine whether the state has a compelling interest justifying greater restrictions on minors than on adults."[61] Therefore, we will

---

(D.C.Cir.1999) (plurality opinion) (recognizing some Supreme Court case law suggesting "some ... generalized right to movement" but declining to find "the existence of a fundamental right for juveniles to be in a public place without adult supervision during curfew hours").

**53.** *City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (internal quotations and citations omitted).

**54.** *See Peloza v. Freas*, 871 P.2d 687, 691 (Alaska 1994) (recognizing right to both interstate and intrastate travel as affecting constitutionality of durational residency requirements).

**55.** *See Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir.1993) (assuming without deciding that right to move about freely was fundamental for purpose of reviewing juvenile curfew ordinance).

**56.** 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

**57.** *Id.* at 634, 99 S.Ct. 3035.

**58.** 35 P.3d 30 (Alaska 2001).

**59.** *Id.* at 45 (quoting *Planned Parenthood of Cent. New Jersey v. Farmer*, 165 N.J. 609, 762 A.2d 620, 633 (2000)).

**60.** We are aware that some courts have applied intermediate scrutiny when evaluating the constitutionality of a juvenile curfew ordinance. *See, e.g., Ramos v. Town of Vernon*, 353 F.3d 171, 180–81 (2d Cir.2003); *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 541 (D.C.Cir.1999); *Schleifer ex rel. Schleifer v. City of Charlottesville*, 159 F.3d 843, 847 (4th Cir.1998). While *Bellotti*, 443 U.S. at 634, 99 S.Ct. 3035 (plurality opinion), held that the rights of minors are not always coextensive with those of adults, the Supreme Court has recognized that there are many situations in which the rights of children warrant the same level of protection. *See, e.g., In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that "beyond a reasonable doubt" standard applies to juveniles in criminal proceedings); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that criminal due process rights apply in juvenile delinquency proceedings). In our view, the determination of whether the minor's right is coextensive with that of an adult is not a question of whether the right itself is fundamental. Fundamental rights will be reviewed using a strict scrutiny standard. Rather, where minors are involved, we will use the *Bellotti* factors to assess the government's justification for its infringement on those fundamental rights.

**61.** *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 945 (9th Cir.1997). *See also Qutb v.*

apply strict scrutiny in reviewing the plaintiffs' equal protection claims because those rights are fundamental.

### c. narrowly tailored

■ In order for the ordinance to survive strict scrutiny, the classification created must be narrowly tailored to promote a compelling governmental interest and be the least restrictive means available to vindicate that interest.[62]

■ The principal objectives of the curfew ordinance were to protect minors from crime and to curb juvenile crime.[63] The government has a compelling interest in each of these objectives.[64] Whether the ordinance survives strict scrutiny, then, depends on whether the ordinance is narrowly tailored and whether there is a less restrictive alternative to meet the municipality's interest.

■ "To be narrowly tailored, there must be a sufficient nexus between the stated government interest and the classification created by the ordinance."[65] The curfew was enacted because of an increase in juvenile crime. The plaintiffs claim, however, that Anchorage did not have enough data before it when enacting the ordinance. The adequacy of statistical support for a curfew law was also challenged in *Qutb v. Strauss*.[66] There, the Fifth Circuit determined that,

> [a]lthough the city was unable to provide precise data concerning the number of juveniles who commit crimes during the

curfew hours, or the number of juvenile victims of crimes committed during the curfew, the city nonetheless provided sufficient data to demonstrate that the classification created by the ordinance "fits" the state's compelling interest.[67]

Sufficient data was provided here as well. While Anchorage passed the ordinance without any fact-finding, it had the benefit of police department statistics concerning the number of juvenile arrests between the hours of 11:00 p.m. and 5:00 a.m., broken down by categories of crime, as well as the number of juvenile victims, the percentage of emergency calls during that period, and comparative figures showing what percentages of calls (for all categories of crimes) were received during those hours. The plaintiffs claim that a memorandum issued by the Anchorage Police Department the day after the ordinance was enacted shows that no statistics were utilized. The passage they cite, however, merely states that the computer was unable to provide a "succinct report" of the data, that the required statistics were gathered by hand, and that a standard report format should be developed to make gathering the figures easier in the future. The memorandum cited by the plaintiffs disproves their own allegation.

Not only did Anchorage rely on statistical data showing an increase in juvenile crime, but it also heard testimony to that effect from law enforcement officers regarding ju-

---

*Strauss*, 11 F.3d 488, 492 (5th Cir.1993) (subjecting juvenile curfew ordinance to strict scrutiny review).

62. *Planned Parenthood*, 35 P.3d at 42 (when state action infringes upon fundamental right, state must demonstrate that no less restrictive alternative exists to accomplish its purpose).

63. The curfew ordinance was aimed at both protecting minors and curbing juvenile crime. The ordinance noted that the municipality "highly values the safety and welfare of our minors," and that "the physical, psychological, and moral well-being of our minors is threatened by ... increasing ... street crime and juvenile gang activity." It also stated that during the late night and early morning hours "minors in public places are particularly susceptible to participate in unlawful activities and are particularly vulnerable to become victims of older perpetrators of

crime" and that "the Municipality has an obligation to provide for the protection of minors."

64. *See, e.g., Hodgson v. Minnesota*, 497 U.S. 417, 444, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (the state "has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely."); *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) ("We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors.").

65. *Nunez*, 114 F.3d at 946.

66. 11 F.3d 488 (5th Cir.1993).

67. *Id.* at 493.

venile criminal activity during curfew hours. When it enacted the ordinance, Anchorage considered sufficient data to determine that a youth curfew might aid in decreasing juvenile crime and victimization.

The plaintiffs are correct that, since passage of the ordinance, police reports show that only a small percentage of violent and property crimes occurs during curfew hours. But this is just as likely evidence of the curfew's effectiveness as it is evidence that the ordinance was not needed. It could also be the result of other factors, such as an overall decrease in crime, as occurred in Alaska during the period in question.

In sum, Anchorage considered sufficient data to provide the nexus between the government's interest in protecting juveniles and decreasing juvenile crime and the classifications created by the ordinance. Moreover, statistics gathered since passage of the ordinance do not cast substantial doubt on this connection.

### d. least restrictive means

■ We now turn to the last inquiry under our equal protection analysis: Is the ordinance the least restrictive means available to achieve the municipality's objective? For the purpose of a facial review in this declaratory judgment action, as the ordinance concerns unemancipated minors who are moving about in public after curfew hours without a recognized purpose or with an improper purpose,[68] we believe the answer is "yes." The ordinance affects minors only from 11:00 p.m. to 5:00 a.m. on weeknights during the school year and 1:00 a.m. to 5:00 a.m. on weekends and in the summer. It also contains numerous exceptions that allow minors to be out after curfew hours for employment, including traveling to and from work activities; for attendance at activities sponsored by civic organizations, including traveling to and from such events; in the event of emergency; for errands done for

their parents; for any purpose when they are accompanied by a parent, guardian, or adult acting with parental authorization; and in front of their own homes without qualification. We believe that, taken as a whole, the ordinance is the least restrictive means available to achieve the municipality's interests.[69]

The plaintiffs argue that a less restrictive alternative would be to impose the curfew as a probationary measure only on minors who violate the law. But this would not meet the ordinance's stated purpose of protecting juveniles from becoming victims of crime perpetrated by adults. The plaintiffs also argue that the municipality could attempt to reduce juvenile crime by increasing recreational activities for youth or by promoting the Anchorage Youth Court. This too would fail to address the municipality's concern for minors as victims of crime.

### e. married or emancipated minors

■ The plaintiffs also allege that the ordinance violates equal protection guarantees because it does not apply to minors who are married or emancipated. But plaintiffs misunderstand the legal significance of marriage and emancipation. The ordinance establishes a curfew for minors but exempts from prosecution a minor who is married or who has had the disabilities of minority removed in accordance with AS 09.55.590.[70] These exemptions are redundant since both married and emancipated minors are considered adults under the law. Alaska Statute 25.20.020 states that "[a] person arrives at the age of majority upon being married according to law ...." and AS 09.55.590(g) states that "[e]xcept for specific constitutional and statutory requirements for voting and use of alcoholic beverages, a minor whose disabilities are removed for general purposes has the power and capacity of an adult, including, but not limited to the right to self-control...." The ordinance does not apply to

---

**68.** We use this phrase to denote minors who are out during curfew hours but fall under none of the exceptions in the ordinance.

**69.** *See Schleifer ex rel. Schleifer v. City of Charlottesville,* 159 F.3d 843, 851–52 (4th Cir.1998) (holding that juvenile curfew ordinance was least

restrictive alternative because it was only in effect for a few hours each night and it contained similar list of exceptions); *Qutb,* 11 F.3d at 494–95 (same).

**70.** AMC 8.75.060(C)(1)(h).

married or emancipated minors because they are deemed adults by law.

### f. facial challenge

As we noted, plaintiffs seeking facial invalidation of a law must establish at least that the law does not have a "plainly legitimate sweep." [71] The failure to meet this burden in this case does not preclude the possibility that the ordinance as applied in other situations might be unconstitutional. And although the ordinance could be enforced in ways that bear no rational connection to the municipality's goals, or in ways that unduly restrict the underlying substantive rights of movement, privacy, and speech, we need not deal with such possibilities on this facial review. [72] Because there is a sufficient nexus between the municipality's interest and the classification created by the ordinance, and because the ordinance presents the least restrictive alternative for meeting all of its stated goals, we hold that the ordinance is not facially unconstitutional as applied to minors who are out during curfew hours with no recognized purpose or with an improper purpose.

### 3. The ordinance does not violate the constitutional rights of parents.

The plaintiffs claim that the ordinance violates their Fourteenth Amendment right to due process because it infringes upon the liberty interest of parents to determine how to raise their children. Anchorage argues that parents' rights to raise their children are not unqualified and that, in any event, they do not supersede the government's concurrent right to regulate children's conduct.

Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property without due process of law." [73] The due process clause guarantees more than fair process, however; it "also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" [74] Thus, the Fourteenth Amendment prohibits the government from infringing on fundamental liberty interests unless that infringement is narrowly tailored to serve a compelling state interest. [75]

In order to qualify for substantive due process protection, the fundamental right must be deeply rooted in this nation's history, and the fundamental liberty interest must be carefully described. [76] The due process clause protects the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." [77] This interest was recognized more than seventy-five years ago in *Meyer v. Nebraska.* [78] We have also recognized that "[t]he 'right to direct the upbringing of one's child' is undeniably 'one of the most basic of all civil liberties.'" [79] Thus, the plaintiffs are correct that parents have a fundamental right to control the upbringing of their children.

The plaintiffs contend that the curfew on its face interferes with the rights of parents because it limits the freedom of parents to authorize their children to engage in harmless errands or entertainment. They also contend that the ordinance limits the ability

---

71. *Troxel v. Granville,* 530 U.S. 57, 85 & n. 6, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Stevens, J., dissenting).

72. *See State, Dep't of Revenue, Child Support Enforcement Div. v. Beans,* 965 P.2d 725, 728 (Alaska 1998) (holding that mere fact that statute may be applied unconstitutionally need not result in facial unconstitutionality).

73. U.S. CONST. amend XIV, § 1.

74. *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054 (quoting *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)).

75. *Washington,* 521 U.S. at 721, 117 S.Ct. 2258.

76. *Id.* at 720–21, 117 S.Ct. 2258.

77. *Troxel,* 530 U.S. at 66, 120 S.Ct. 2054.

78. 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

79. *In re Adoption of A.F.M.,* 15 P.3d 258, 266 (Alaska 2001) (quoting *Flores v. Flores,* 598 P.2d 893, 895 (Alaska 1979)).

of parents to promote the development of their children by gradually giving them some of the freedoms and responsibilities of adulthood. Anchorage responds that recognizing the plaintiffs' argument would transform any case involving minors' rights into one about parents' rights, thereby "avoid[ing] the Supreme Court's determination that children do not possess all the freedoms of adults."[80]

As the United States Supreme Court noted in *Prince v. Massachusetts,*[81] "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare."[82] Therefore, to the extent that the curfew is enforced against minors moving about in public with no purpose or with an improper purpose, we agree with Anchorage. We have already held in Part IV.A.2 that the municipality's interest in the ordinance is compelling. We also find that the curfew is the alternative least restrictive of parental rights while meeting the municipality's stated goals. Parents can avoid the effects of the ordinance by providing a note to their child,[83] by accompanying the child while in public after curfew hours, or by authorizing someone over the age of eighteen to have care and custody of the child. The ordinance has little impact on parents who wish to authorize their children to attend civic events, hold paid employment, or act in emergencies or on authorized errands.[84] Although the requirement of a timed, dated, and signed writing to prove that the minor is on a parental errand does give us some pause,[85] we agree with Anchorage that such a requirement is appropriate to the reasonable enforcement of the ordinance, and we believe that the writing requirement would not unduly burden parents in its mainstream application. We therefore hold that the ordinance has a "plainly legitimate sweep."[86] As with the plaintiffs' equal protection claim, although the ordinance could be enforced in ways that bear no rational connection to the municipality's goals, or in ways that more directly infringe the rights involved (here, the rights of parents to direct the upbringing of their children), we need not deal with such remote possibilities on this facial review.[87]

Because the municipality's interest is sufficiently compelling, and because the ordinance presents the least restrictive alternative for meeting all of its stated goals, we hold that the ordinance is not facially unconstitutional with regard to minors who are out after curfew with no purpose or with an improper purpose, or to parents who knowingly permit or, by insufficient control allow, their children to commit violations.

### B. Treacy Was Properly Found Liable Under the Ordinance.

#### 1. Exclusion of Treacy's Trial Exhibits Was Within the Superior Court's Discretion.

In his appeal to the superior court, Treacy attempted to introduce several exhibits into the record, including Anchorage Assembly and Anchorage Police Department internal memoranda used in drafting the ordinance and an article by the Justice Policy Institute entitled "The Impact of Juvenile Curfew Laws in California." Anchorage

---

**80.** *See also Schleifer ex rel. Schleifer v. City of Charlottesville,* 159 F.3d 843, 852–53 (4th Cir. 1998) (adopting similar analysis in rejecting challenge to Charlottesville curfew ordinance).

**81.** 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944)

**82.** *Id.* at 167, 64 S.Ct. 438.

**83.** The requirement of a note was deleted from the ordinance by the Anchorage Assembly after the violations charged in these cases. The current ordinance provides the following exception: "Attending, or going to and returning from, any lawful activity with the consent of the minor's parent or guardian." AMC 8.75.060(C)(1)(e) (2003).

**84.** *See, e.g., Schleifer,* 159 F.3d at 853 (upholding ordinance because no substantial impact on parents' rights); *Qutb v. Strauss,* 11 F.3d 488, 495–96 (5th Cir.1993) (same).

**85.** *But see supra* n. 83.

**86.** *See Troxel v. Granville,* 530 U.S. 57, 85 & n. 6, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (Stevens, J., dissenting).

**87.** *See State, Dep't of Revenue, Child Support Enforcement Div. v. Beans,* 965 P.2d 725, 728 (Alaska 1998).

moved to strike the exhibits on the ground that they were not part of the agency record on appeal,[88] and Judge Hunt granted the motion without explanation. Treacy appeals this ruling, arguing that the exhibits consisted of legislative facts properly considered by an appeals court[89] and that Judge Hunt should have ordered a *de novo* trial to consider the constitutional issues at stake since the hearing officer could not properly have ruled on the constitutionality of the ordinance.[90] Anchorage contends that the exhibits are not legislative facts and argues that, while Alaska Appellate Rule 609(b)(1)[91] does afford the trial court discretion to hold a trial *de novo* in an administrative agency review, such trials are rare.[92]

We review the superior court's decision whether to order a *de novo* trial or a *de novo* examination of the record for abuse of discretion.[93] To find an abuse of discretion, we must be "left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling."[94] A trial *de novo* is particularly appropriate when certain issues are not within the expertise of the reviewing body or when the present record is inadequate.[95] A trial *de novo* is also appropriate when the procedures of the administrative body are inadequate, for instance when they do not provide due process,[96] when the agency was biased,[97] or when the agency excluded important evidence.[98] Normally, however, a court will review an agency decision on the record.[99] In this case, where there was no suggestion of inadequate procedure or bias, the superior court acted well within its discretion in not granting a trial *de novo* on the broad question of the constitutional validity of the ordinance. Since there was no trial *de novo*, the superior court also acted within its discretion to review only the administrative agency record under Alaska Appellate Rule 604(b)(1), regardless of whether the proposed exhibits contained legislative facts. It should be noted that, even had we ruled to the contrary, this issue would be moot, as we have considered most, if not all, of the excluded evidence in our facial review of the ordinance.

**2. The word "remain" in the ordinance does not imply lack of motion.**

Treacy contests the application of the ordinance to his particular case. He argues that he cannot be said to have "remained" in public under the ordinance, which defines "remain" in part as "to stay or to linger," because all of these words imply a lack of motion, whereas he was in a moving car. Anchorage replies that the intent of the ordinance is to prevent minors from being on the streets or in public places after curfew hours, and that Treacy's definition of "re-

**88.** Alaska R.App. P. 604(b)(1)(A) governs actions in which the superior court acts as an appellate court for an agency proceeding and provides in relevant part that "[t]he record on appeal consists of the original papers and exhibits filed with the administrative agency, and a typed transcript of the record of proceedings before the agency."

**89.** *See State v. Erickson*, 574 P.2d 1, 7 (Alaska 1978) (holding that appellate court may consider "legislative facts," those that provide background policy considerations of statute or rule, even if those facts were not presented to trial court).

**90.** *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures.").

**91.** Alaska R.App. P. 609(b)(1) provides in relevant part that "[i]n an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part."

**92.** *See Southwest Marine, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 941 P.2d 166, 179 (Alaska 1997) (citing *Kott v. City of Fairbanks*, 661 P.2d 177, 180 n. 1 (Alaska 1983)).

**93.** *See id.* at 172, 179–80.

**94.** *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998).

**95.** *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 102 (Alaska 1992).

**96.** *State v. Lundgren Pac. Constr. Co., Inc.*, 603 P.2d 889, 896 (Alaska 1979).

**97.** *City of Fairbanks Mun. Util. Sys. v. Lees*, 705 P.2d 457, 460 (Alaska 1985).

**98.** *Id.*

**99.** *Id.*

main" is so excessively precise as to strain common sense.

 We hold that Treacy could not avoid citation under the ordinance merely by moving from one place to another.[100] "Remain" does not necessarily imply a lack of motion; as we discussed above, a minor who is moving about in public without a purpose or with an improper purpose "remains" in public after a time when he or she should have gained lawful admittance to a place to which a substantial group of the public does not have access.[101] Although other courts have held that "remain" in a juvenile curfew ordinance simply refers to the minor "being" in public,[102] Treacy's case does not require us to rule on this issue.[103] We hold that the hearing officer and superior court did not construe the ordinance improperly in Treacy's case.

## V. CONCLUSION

The ordinance is not void for vagueness. The ordinance is not unconstitutional on its face: It serves compelling governmental interests, it is supported by a sufficiently close connection between those interests and the classifications it utilizes to vindicate them, and it uses the least restrictive alternative in doing so. Accordingly, we conclude that the ordinance is constitutional under the United States and Alaska Constitutions. We therefore AFFIRM the decision in 3AN–99–3396 CI holding the ordinance constitutional and REVERSE the decision in 3AN–99–7662 CI holding the ordinance unconstitutional.

---

**100.** We review questions of statutory construction *de novo*. *See State v. Saathoff*, 29 P.3d 236, 237 (Alaska 2001).

**101.** *See* AMC 8.75.060(A) (*"Public place* means any place to which the public or a substantial group of the public has access").

**102.** *See Ramos ex rel. Ramos v. Town of Vernon*, 48 F.Supp.2d 176, 182 (D.Conn.1999), *rev'd on other grounds, Ramos v. Town of Vernon*, 353 F.3d 171 (2d Cir.2003); *Bykofsky v. Borough of Middletown*, 401 F.Supp. 1242, 1252 (M.D.Pa. 1975).

**103.** Aside from the exceptions, the ordinance suggests that a minor who leaves a public establishment at the request of the owner and goes home, for instance, does not violate the statute while in transit. *See* AMC 8.75.060(A) (*"Remain* means to: 1. Linger or stay; or 2. Fail to leave the premises when requested to do so by a police officer or the owner, operator, or other person in control of the premises."). Whether a minor has "remained" in public after curfew hours is a matter for case-by-case determination.