[915 NE2d 593, 886 NYS2d 648]

JIOVON ANONYMOUS, an Infant, by His Father and Legal Guardian, THOMAS ANONYMOUS, et al., Respondents, v CITY OF ROCHESTER et al., Appellants.

Argued April 28, 2009; decided June 9, 2009

**POINTS OF COUNSEL**

*Thomas S. Richards, Corporation Counsel,* Rochester (*Jeffrey Eichner* and *Michele Romance Crain* of counsel), for appellants. I. The City of Rochester has authority to adopt a curfew ordinance. II. The curfew ordinance is consistent with the Family Court Act and Penal Law. (*Matter of Shannon B.,* 70 NY2d 458; *Matter of Bernard G.,* 247 AD2d 91; *Santosky v Kramer,* 455 US 745; *Matter of Terrence G.,* 109 AD2d 440; *Matter of D'Angelo H.,* 184 AD2d 1039; *Matter of Marrhonda G.,* 81 NY2d 942; *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 60 NY2d 99; *Incorporated Vil. of Nyack v Daytop Vil.,* 78 NY2d 500.) III. The curfew meets equal protection requirements. (*Ramos v Town of Vernon,* 353 F3d 171; *Buzzetti v City of New York,* 140 F3d 134; *People ex rel. Wayburn v Schupf,* 39 NY2d 682; *Adarand Constructors, Inc. v Pena,* 515 US 200;

*Plyler v Doe,* 457 US 202; *Gregory v Ashcroft,* 501 US 452; *Wengler v Druggists Mut. Ins. Co.,* 446 US 142; *United States v Coleman,* 166 F3d 428; *Bellotti v Baird,* 443 US 622; *Hutchins v District of Columbia,* 188 F3d 531.) IV. Other curfew decisions support the City of Rochester curfew. (*Ramos v Town of Vernon,* 353 F3d 171; *Qutb v Strauss,* 11 F3d 488, *cert denied sub nom. Qutb v Bartlett,* 511 US 1127; *Schleifer by Schleifer v City of Charlottesville,* 159 F3d 843, 526 US 1018; *Ginsberg v New York,* 390 US 629; *Craig v Boren,* 429 US 190; *Hutchins v District of Columbia,* 188 F3d 531; *Nunez by Nunez v City of San Diego,* 114 F3d 935; *Hodgkins v Peterson,* 355 F3d 1048.) V. Facial challenges are disfavored. VI. The curfew ordinance does not violate the due process rights of the parent. (*Qutb v Strauss,* 11 F3d 488; *Ramos v Town of Vernon,* 353 F3d 171.) VII. The curfew does not violate the First Amendment of the Federal Constitution. (*Nunez by Nunez v City of San Diego,* 114 F3d 935; *Hodgkins v Peterson,* 355 F3d 1048; *Dallas v Stanglin,* 490 US 19; *Board of Directors of Rotary Int'l v Rotary Club of Duarte,* 481 US 537; *Griswold v Connecticut,* 381 US 479; *People v Barton,* 8 NY3d 70; *Cornelius v NAACP Legal Defense & Ed. Fund, Inc.,* 473 US 788; *Qutb v Strauss,* 11 F3d 488; *Hodgkins v Peterson,* 355 F3d 1048; *Hutchins v District of Columbia,* 188 F3d 531.)

*Davidson Fink LLP,* Rochester (*Michael Adam Burger* of counsel), for respondents. I. This appeal is not moot. (*Matter of Michael W.,* 295 AD2d 134; *Matter of Carlton F.,* 25 AD3d 610; *Matter of Charles M.,* 143 AD2d 96; *People v Salaam,* 83 NY2d 51; *Roe v Wade,* 410 US 113; *East Meadow Community Concerts Assn. v Board of Educ. of Union Free School Dist No. 3,* 18 NY2d 129; *Matter of Hearst Corp. v Clyne,* 50 NY2d 707; *People ex rel. Maxian v Brown,* 77 NY2d 422; *People ex rel. Guggenheim v Mucci,* 32 NY2d 307; *Ramos v Town of Vernon,* 331 F3d 315.) II. The City of Rochester lacks the statutory authority to enact a curfew. (*Bellanca v New York State Liq. Auth.,* 54 NY2d 228; *Robin v Incorporated Vil. of Hempstead,* 30 NY2d 347; *Matter of Ames v Smoot,* 98 AD2d 216; *Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372; *Fenster v Leary,* 20 NY2d 309.) III. The curfew unlawfully supersedes sections 305.2 and 724 of the Family Court Act. (*Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395; *Matter of Randy K.,* 77 NY2d 398; *Matter of Detrece H.,* 78 NY2d 107; *Matter of Victor M.,* 9 NY3d 84; *Matter of Michael G.,* 99 Misc 2d 699; *Matter of David W.,* 28 NY2d 589; *Matter of James T.,* 189 AD2d 580; *Matter of Joel I.,* 165 Misc 2d 160; *Matter of Charles M.,* 135

Misc 2d 450, 143 AD2d 96; *Matter of Carlton F.,* 25 AD3d 610.) IV. Children are arrested under the curfew. (*Matter of Victor M.,* 9 NY3d 84; *People v Ryan,* 12 NY3d 28; *Jacques v Sears, Roebuck & Co.,* 30 NY2d 466; *Matter of Doris A.,* 145 Misc 2d 222; *Matter of D'Angelo H.,* 184 AD2d 1039; *Matter of Marrhonda G.,* 81 NY2d 942; *Matter of Marangeli M.,* 199 AD2d 189; *United States v Smith,* 549 F3d 355; *People v Marsh,* 20 NY2d 98; *Matter of Terrence G.,* 109 AD2d 440.) V. The curfew illegally supersedes section 30.00 of the Penal Law. (*Matter of Joe A.,* 171 Misc 2d 241; *People v O'Neill,* 79 AD2d 429; *Martinetti v Town of New Hartford Police Dept.,* 307 AD2d 735; *Matter of Musso,* 102 Misc 2d 934; *Lee v Sandberg,* 136 F3d 94; *People v Scott,* 79 NY2d 474; *People v Lee,* 58 NY2d 491; *Craig v Boren,* 429 US 190.) VI. The curfew unlawfully supersedes section 718 of the Family Court Act. (*Rivers v Katz,* 67 NY2d 485; *Parham v J.R.,* 442 US 584; *Matter of Sanjivini K.,* 47 NY2d 374; *Matter of Bennett v Jeffreys,* 40 NY2d 543; *Matter of Leon RR,* 48 NY2d 117; *Finlay v Finlay,* 240 NY 429; *Santosky v Kramer,* 455 US 745; *Stanley v Illinois,* 405 US 645; *Schall v Martin,* 467 US 253; *Matter of Michael B.,* 80 NY2d 299.) VII. The application of the curfew to 16 year olds is not severable. (*CWM Chem. Servs., L.L.C. v Roth,* 6 NY3d 410; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York,* 79 NY2d 39; *People v Taylor,* 9 NY3d 129.) VIII. The curfew exceeds the City of Rochester's authority under General City Law § 20 (37). (*People v Bright,* 71 NY2d 376; *People v Diaz,* 4 NY2d 469; *Chicago v Morales,* 527 US 41; *People v Boulware,* 130 AD2d 370; *Consolidated Edison Co. of N.Y. v Town of Red Hook,* 60 NY2d 99; *People v Johnson,* 6 NY2d 549; *People v Merolla,* 9 NY2d 62; *People v Pagnotta,* 25 NY2d 333; *People v Smith,* 44 NY2d 613; *People v Uplinger,* 58 NY2d 936.) IX. The curfew fails to comply with the requirements of Executive Law § 24. (*Hirabayashi v United States,* 320 US 81; *Lambert v California,* 355 US 225.) X. The curfew fails to comply with section 22 of the Municipal Home Rule Law. (*Bareham v City of Rochester,* 246 NY 140; *Turnpike Woods v Town of Stony Point,* 70 NY2d 735; *Kamhi v Town of Yorktown,* 74 NY2d 423.) XI. The curfew ordinance violates Jiovon's right to freedom of movement. (*Aptheker v Secretary of State,* 378 US 500; *Ramos v Town of Vernon,* 353 F3d 171; *Johnson v Cincinnati,* 310 F3d 484; *Waters v Barry,* 711 F Supp 1125; *King v New Rochelle Mun. Hous. Auth.,* 442 F2d 646; *Chicago v Morales,* 527 US 41; *Williams v Town of Greenburgh,* 535 F3d 71; *People v Leonard,* 62 NY2d 404; *City of New York v Andrews,* 186 Misc 2d 533; *Town of*

*Pompey v Parker,* 53 AD2d 125.) XII. The curfew ordinance violates minors' rights to freedom of speech and freedom of assembly. (*People v Kearse,* 58 Misc 2d 277; *De Jonge v Oregon,* 299 US 353; *Hodgkins v Peterson,* 355 F3d 1048; *Nunez by Nunez v City of San Diego,* 114 F3d 935; *Johnson v Cincinnati,* 310 F3d 484; *Coates v Cincinnati,* 402 US 611; *Wright v Georgia,* 373 US 284; *Johnson v City of Opelousas,* 658 F2d 1065; *People v Ryan,* 12 NY3d 28; *Saia v New York,* 334 US 558.) XIII. The curfew ordinance is unconstitutionally vague. (*People v Bright,* 71 NY2d 376; *People v Diaz,* 4 NY2d 469; *Trio Distrib. Corp. v City of Albany,* 2 NY2d 690; *Chicago v Morales,* 527 US 41; *Kolender v Lawson,* 461 US 352; *Hodgkins v Peterson,* 355 F3d 1048; *Papachristou v Jacksonville,* 405 US 156; *People v Kearse,* 56 Misc 2d 586, 58 Misc 2d 277; *People v Dietze,* 75 NY2d 47; *Erznoznik v Jacksonville,* 422 US 205.) XIV. The curfew is unconstitutionally overbroad. (*People v Bright,* 71 NY2d 376; *Shuttlesworth v Birmingham,* 382 US 87; *Chicago v Morales,* 527 US 41; *Johnson v City of Opelousas,* 658 F2d 1065; *Qutb v Strauss,* 11 F3d 488; *Speiser v Randall,* 357 US 513; *Hodgkins v Peterson,* 355 F3d 1048; *Cox v Louisiana,* 379 US 536; *Ramos v Town of Vernon,* 353 F3d 171; *People v Bunis,* 9 NY2d 1). XV. The curfew ordinance permits seizures of minors and suspected minors without probable cause in violation of the Fourth and Fourteenth Amendments of the US Constitution and article I, § 12 of the New York Constitution. (*Matter of Doris A.,* 145 Misc 2d 222, 163 AD2d 63; *Matter of Victor M.,* 9 NY3d 84; *People v Adams,* 32 NY2d 451; *Matter of Robert M.,* 99 Misc 2d 462; *People v Robinson,* 97 NY2d 341; *People v Scott D.,* 34 NY2d 483; *People v De Bour,* 40 NY2d 210; *People v Boulware,* 130 AD2d 370; *People v Howard,* 50 NY2d 583; *People v Beltrand,* 63 Misc 2d 1041.) XVI. The curfew violates the rights of parents to raise their children without undue government interference. (*Troxel v Granville,* 530 US 57; *Santosky v Kramer,* 455 US 745; *Rivers v Katz,* 67 NY2d 485; *Waters v Barry,* 711 F Supp 1125; *People v Hitchcock,* 98 NY2d 586; *Stanley v Illinois,* 405 US 645; *Nunez by Nunez v City of San Diego,* 114 F3d 935; *Bellotti v Baird,* 443 US 622; *Johnson v City of Opelousas,* 658 F2d 1065; *Ramos v Town of Vernon,* 353 F3d 171.) XVII. The curfew violates Jiovon's right to due process. (*Bellotti v Baird,* 443 US 622; *Matter of Robert J.,* 2 NY3d 339; *People ex rel. Shaw v Lombard,* 95 Misc 2d 664; *Williamson v United States,* 184 F2d 280; *People v Catu,* 4 NY3d 242; *People v Santana,* 7 NY3d 234; *Freedman v Maryland,* 380 US 51; *People ex rel. Wayburn v Schupf,* 39 NY2d 682; *Schall v Martin,* 467 US 253.)

XVIII. The ordinance violates Jiovon's right to the equal protection of the law. (*Matter of Abrams v Bronstein,* 33 NY2d 488; *Wilson v Crosson,* 222 AD2d 1085; *Attorney General of N. Y. v Soto-Lopez,* 476 US 898; *Nunez by Nunez v City of San Diego,* 114 F3d 935; *Qutb v Strauss,* 11 F3d 488; *Hodgkins v Peterson,* 355 F3d 1048; *People ex rel. Wayburn v Schupf,* 39 NY2d 682; *Ramos v Town of Vernon,* 353 F3d 171; *Kramer v Union Free School Dist. No. 15,* 395 US 621.) XIX. The City of Rochester's "facts" and figures fail to justify the curfew. (*People v Molnar,* 98 NY2d 328; *Matter of E.S. v P.D.,* 8 NY3d 150; *People v Silvestry,* 11 NY3d 902; *Waters v Barry,* 711 F Supp 1125; *Papachristou v Jacksonville,* 405 US 156; *Craig v Boren,* 429 US 190; *People v Boulware,* 130 AD2d 370; *Ramos v Town of Vernon,* 353 F3d 171; *Hutchins v District of Columbia,* 942 F Supp 665, 188 F3d 531.) XX. Appellants' cited cases do not support the City of Rochester's curfew. (*Hutchins v District of Columbia,* 188 F3d 531; *Qutb v Srauss,* 11 F3d 488; *Ramos v Town of Vernon,* 353 F3d 171; *City of New York v Andrews,* 186 Misc 2d 533; *Schleifer by Schleifer v City of Charlottesville,* 159 F3d 843; *Bray v City of New York,* 346 F Supp 2d 480; *People v Bezjak,* 11 Misc 3d 424; *Coates v Cincinnati,* 402 US 611; *Lewis v New Orleans,* 415 US 130; *Hodgkins v Peterson,* 355 F3d 1048.)

*Adriana Piñón,* New York City, and *Arthur Eisenberg* for New York Civil Liberties Union, amicus curiae. I. The City of Rochester curfew violates parents' fundamental right to direct the upbringing of their children. (*Wisconsin v Yoder,* 406 US 205; *Meyer v Nebraska,* 262 US 390; *Troxel v Granville,* 530 US 57; *Prince v Massachusetts,* 321 US 158; *Pierce v Society of Sisters,* 268 US 510; *Ginsberg v New York,* 390 US 629; *Hutchins v District of Columbia,* 188 F3d 531; *Parham v J.R.,* 442 US 584; *Action for Children's Tel. v Federal Communications Commn.,* 58 F3d 654; *Matter of E.S. v P.D.,* 8 NY3d 150.) II. The City of Rochester ordinance also violates article I, § 6 of the New York State Constitution. (*People v P.J. Video,* 68 NY2d 296; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553; *Matter of Alfonso v Fernandez,* 195 AD2d 46; *Price v New York City Bd. of Educ.,* 16 Misc 3d 543; *Matter of C.M. v C.H.,* 6 Misc 3d 361; *Matter of E.S. v P.D.,* 8 NY3d 150; *Matter of Roe v Doe,* 29 NY2d 188; *Michigan v Long,* 463 US 1032; *People v Alvarez,* 70 NY2d 375; *People v Scott,* 79 NY2d 474.)

*John A. Mancini,* Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae. I. The New York

State Constitution and Municipal Home Rule Law permit municipalities to enact youth curfew laws. (*New York State Club Assn. v City of New York,* 69 NY2d 211; *Matter of Michael G.,* 99 Misc 2d 699.) II. Public policy mandates that municipalities be afforded flexibility in protecting the community's youth.

## OPINION OF THE COURT

Jones, J.

The issue before this Court is whether the juvenile nighttime curfew adopted by the Rochester City Council violates the Federal and New York State Constitutions. We hold that it does.

## I

In 2006, the Rochester City Council (City Council) adopted chapter 45 of the Code of the City of Rochester (City Code) which established a nighttime curfew for juveniles. Under the curfew:

> "It is unlawful for minors to be in or upon any public place within the City at any time between 11:00 P.M. of one day and 5:00 A.M. of the immediately following day, except that on Friday and Saturday the hours shall be between 12:00 midnight and 5:00 A.M. of the immediately following day" (Rochester City Code § 45-3).

A minor is defined as "[a] person under the age of 17 [but] [t]he term does not include persons under 17 who are married or have been legally emancipated" (Rochester City Code § 45-2). The curfew provides for certain exceptions which make the prohibition under the curfew inapplicable

> "if the minor can prove that:

> "A. The minor was accompanied by his or her parent, guardian, or other responsible adult;

> "B. The minor was engaged in a lawful employment activity or was going to or returning home from his or her place of employment;

> "C. The minor was involved in an emergency situation;

> "D. The minor was going to, attending, or returning home from an official school, religious, or other

recreational activity sponsored and/or supervised by a public entity or a civic organization;

"E. The minor was in the public place for the specific purpose of exercising fundamental rights such as freedom of speech or religion or the right of assembly protected by the First Amendment of the United States Constitution or Article I of the Constitution of the State of New York, as opposed to generalized social association with others; or

"F. The minor was engaged in interstate travel" (Rochester City Code § 45-4).[1]

Under section 45-6 of the City Code, "[a] police officer may approach a person who appears to be a minor in a public place during prohibited hours to request information, including the person's name and age and reason for being in the public place" and "may detain a minor or take a minor into custody based on a violation of [the curfew] if the police officer . . . [r]easonably believes that the [curfew has been violated] and . . . that none of the exceptions . . . apply" (Rochester City Code § 45-6 [A], [B] [1], [2]). "A police officer who takes a minor into custody based on a violation of [the curfew] [must] take the minor to a location designated by the Chief of Police" (Rochester City Code § 45-6 [C]).[2] Additionally, the ordinance states that "a violation of [the curfew] shall constitute a 'violation' as . . . defined in the . . . Penal Law" (Rochester City Code § 45-5).

The "Findings and purpose" with respect to the curfew were set forth by the City Council in section 45-1. They state that

"A. A significant number of minors are victims of crime and are suspects in crimes committed during the nighttime hours, hours during which minors should generally be off the streets and getting the sleep necessary for their overall health and quality of life. Many of these victimizations and criminal

---

1.  A responsible adult is defined as "[a] person 18 years of age or older specifically authorized by law or by a parent or guardian to have custody and control of a minor" (Rochester City Code § 45-2).

2.  Rochester Police Department General Order 425, titled "Curfew Ordinance Enforcement," provides for actions a police officer can take in his or her discretion (such as directing the minor to proceed home with a warning, take the minor into protective custody, or transport the minor to a parent, guardian, or responsible adult or to a curfew facility) and procedures for searching, transporting, and handcuffing minors taken into custody for a violation of the curfew (56 AD3d 139, 143 [2008]).

acts have occurred on the streets at night and have involved violent crimes, including the murders of teens and preteens.

"B. While parents have the primary responsibility to provide for the safety and welfare of minors, the City also has a substantial interest in the safety and welfare of minors. Moreover, the City has an interest in preventing crime by minors, promoting parental supervision through the establishment of reasonable standards, and in providing for the well-being of the general public.

"C. A curfew will help reduce youth victimization and crime and will advance the public safety, health and general welfare of the citizens of the City" (Rochester City Code § 45-1).

Plaintiffs, father and son, commenced the instant action challenging the validity of the curfew. They seek a declaration that the ordinance is unconstitutional and to enjoin defendants, the City of Rochester (City) and other city officials, from enforcing the ordinance on the grounds that the curfew violated Jiovon's federal and state constitutional rights to freedom of movement, freedom of expression and association, and equal protection under the law, and Thomas' due process rights under the Federal and State Constitutions to raise his children without undue interference from the government. In addition, plaintiffs assert that the ordinance conflicts with, among other statutes, section 305.2 of the Family Court Act and section 30.00 of the Penal Law. Supreme Court granted the City's motion to dismiss finding that the curfew (1) was not inconsistent with New York statutes, (2) did not violate the constitutional rights of the minor, (3) did not unreasonably interfere with the rights of the parent, and (4) was not facially defective.

Declaring the ordinance unconstitutional, the Appellate Division, with two Justices dissenting, reversed and enjoined its enforcement. The court determined that the curfew was inconsistent with Family Court Act § 305.2 and Penal Law § 30.00 because it authorized what was indistinguishable from a warrantless arrest of a minor under the age of 16 upon an alleged violation of the curfew and created criminal responsibility for a "violation" as defined in the Penal Law (56 AD3d at 144-145). The court further determined that, as to minors between the ages of 16 and 17, the curfew violated the constitutional rights

of both the parent and child. The court held that neither the crime statistics for the City[3] nor the statements and opinions from political officials and the Chief of Police provided the requisite nexus to withstand even intermediate scrutiny; in other words, there was no demonstrated substantial relationship between the ordinance and its stated goals (*id.* at 147-149). The court also determined that the curfew impermissibly interfered with parents' fundamental substantive due process right to direct and control the upbringing of their children (*id.* at 150).

In arguing that the curfew should be upheld, the dissenting Justices concluded that intermediate scrutiny was the proper standard of review and that crime statistics from Dallas, Texas, a city with a similar curfew, provided the necessary substantial relationship because defendants "need not produce evidence to a scientific certainty" (*id.* at 153 [Lunn, J., dissenting]). The dissent argued that the ordinance imposed no unconstitutional burden on a minor's First Amendment rights and that its interference with a parent's due process rights was minimal. Additionally, the dissent found no inconsistency between the ordinance and Family Court Act § 305.2 because the ordinance only authorized a "temporary detention" and not an arrest (*id.* at 156-157 [Lunn, J., dissenting]). Defendants appealed to this Court as of right, and we now affirm on different grounds.

## II

■ Plaintiffs challenge the curfew on multiple constitutional and nonconstitutional grounds. Because plaintiffs' nonconstitutional arguments do not wholly dispose of this appeal, we address only their constitutional arguments here (*see generally Matter of Clara C. v William L.*, 96 NY2d 244, 250 [2001]; *id.* at 251 [Levine, J., concurring]). Specifically, we focus primarily on the substantive due process rights of minors to enjoy freedom of movement and of parents to control the upbringing of their children.[4]

---

3. The City's crime statistics showed that "minors [were] substantially more likely to be involved in crime or to be victims of crime during hours outside the curfew" and "the vast majority of violent crime during curfew hours is committed by persons over 18, and that adults are far more likely to be victims of such crime during those hours" (56 AD3d at 148).

4. ■ We note that this case was not rendered moot when plaintiff Jiovon turned 17 because he may still be detained under the curfew if, to an officer, he appears to be under 17 and fails to offer proof of his age.

Curfew ordinances have long been enacted in cities around the country and numerous cases, both state and federal, have addressed similar constitutional issues implicated by these curfews (*see e.g. State v J.P.*, 907 So 2d 1101 [Fla 2005]; *Treacy v Municipality of Anchorage*, 91 P3d 252 [Alaska 2004]; *Ramos v Town of Vernon*, 353 F3d 171 [2d Cir 2003]; *City of Sumner v Walsh*, 148 Wash 2d 490, 61 P3d 1111 [2003]; *Hutchins v District of Columbia*, 188 F3d 531 [DC Cir 1999]; *Schleifer by Schleifer v City of Charlottesville*, 159 F3d 843 [4th Cir 1998]; *Nunez by Nunez v City of San Diego*, 114 F3d 935 [9th Cir 1997]; *Qutb v Strauss*, 11 F3d 488 [5th Cir 1993]; *Johnson v City of Opelousas*, 658 F2d 1065 [5th Cir 1981]). Recent decisions analyzing the constitutionality of curfews have differed as to the appropriate level of scrutiny to apply: some courts have favored intermediate scrutiny (*see e.g. Hodgkins*, 355 F3d at 1057; *Ramos*, 353 F3d at 181; *Hutchins*, 188 F3d at 541; *Schleifer*, 159 F3d at 847), while others have adopted strict scrutiny (*see e.g. J.P.*, 907 So 2d at 1116; *Treacy*, 91 P3d at 265-266; *Nunez*, 114 F3d at 946; *Qutb*, 11 F3d at 492). Regardless of the level of scrutiny ultimately applied, these cases highlight a number of important factors relevant to constitutional review of a curfew ordinance.

Initially, we note that a municipality has general police powers and, under the traditional powers of parens patriae, a strong interest in preserving and promoting the welfare of children (*see Hutchins*, 188 F3d at 539). Plaintiffs do not dispute that the City Council, pursuant to its broad police powers, has the authority to enact a curfew ordinance. The issue, however, is whether that power was exercised in a manner consistent with the Federal and State Constitutions (*see Ramos*, 353 F3d at 172). We first turn to how the curfew may interfere with a minor's constitutional right to freely move about in public.

"[F]reedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful—knowing, studying, arguing, exploring, conversing, observing and even thinking" (*Aptheker v Secretary of State*, 378 US 500, 520 [1964, Douglas, J., concurring]). For an adult, there is no doubt that this right is fundamental and an ordinance interfering with the exercise of such a right would be subject to strict scrutiny (*see Chicago v Morales*, 527 US 41, 54 [1999]). The critical question, however, is whether a minor has a corresponding right that is equally fundamental, and therefore warrants the same restrictive level of scrutiny.

In many situations, children do not possess the same constitutional rights possessed by their adult counterparts; for example, children are afforded lesser freedom of choice than adults with respect to marriage, voting, alcohol consumption, and labor. On the other hand, a child's otherwise-criminal actions do not carry the same consequences as those of adults (*see e.g.* Penal Law § 30.00). The inherent differences between children and adults—specifically their immaturity, vulnerability, and need for parental guidance—have been recognized by the Supreme Court as the basis to justify treating children differently than adults under the Federal Constitution (*see Bellotti v Baird*, 443 US 622, 634-635 [1979]). "So 'although children generally are protected by the same constitutional guarantees . . . as are adults, the State is entitled to adjust its legal system to account for children's vulnerability' by exercising broader authority over their activities" (*Hutchins*, 188 F3d at 541, quoting *Bellotti*, 443 US at 635).

We find the rationale in *Bellotti* persuasive in the context of a curfew because it is hard to imagine that, even absent a curfew, the police may not take a vulnerable five-year-old child found alone at night on a city street into custody for the child's own safety and well-being. Even if we assume that the police may not do the same to a 17 year old under the parens patriae function, an unemancipated minor still does not have the right to freely "come and go at will" (*Vernonia School Dist. 47J v Acton*, 515 US 646, 654 [1995]). Moreover, "juveniles, unlike adults, are always in some form of custody" (*Schall v Martin*, 467 US 253, 265 [1984]) and their right to free movement is limited by their parents' authority to consent or prohibit such movement (*see Ramos*, 353 F3d at 182-183). As one court observed, "it would be inconsistent to find a fundamental right here, when the [Supreme] Court has concluded that the state may intrude upon the 'freedom' of juveniles in a variety of similar circumstances without implicating fundamental rights" (*Hutchins*, 188 F3d at 539, citing *Prince v Massachusetts*, 321 US 158, 166-167 [1944] [prohibiting children from selling magazines on the street]; *Flores*, 507 US 292, 301-303 [1993] [detention of deportable juveniles]; *Schall*, 467 US at 263-264 [pretrial detention of juvenile delinquents]; *Ginsberg v New York*, 390 US 629, 637-643 [1968] [prohibiting sale of non-obscene material to minors]).

Rather than categorically applying strict scrutiny to a curfew which implicates a minor's right to free movement simply because the same right, if possessed by an adult, would be

fundamental, courts have found that intermediate scrutiny is better suited to address the complexities of curfew ordinances—it is sufficiently skeptical and probing to provide rigorous protection of constitutional rights yet flexible enough to accommodate legislation that is carefully drafted to address the vulnerabilities particular to minors (see Ramos, 353 F3d 171 [2003]; see also Schleifer, 159 F3d at 847; Hutchins, 188 F3d at 541). In the context of juvenile curfews, we find persuasive the reasoning which recognizes that although children have rights protected by the Constitution, they can be subject to greater regulation and control by the state than can adults (see Ramos, 353 F3d at 180-181).

Next, we turn to the constitutional right asserted by the father. Our precedent has repeatedly emphasized the "primacy of parental rights" to the care and custody of the child absent abandonment, surrender, or unfitness (Matter of Bennett v Jeffreys, 40 NY2d 543, 547 [1976]). Although it is settled that parents have a fundamental due process right, in certain situations, to raise their children in a manner as they see fit (see Wisconsin v Yoder, 406 US 205, 213-214 [1972]; see also Ginsberg, 390 US at 639), this is not the end of the analysis. Were the ordinance directly aimed at curbing parental control over their children, it might be that strict scrutiny would apply. However, that is not the case here.

Parental rights are not absolute and are subject to reasonable regulation (see Runyon v McCrary, 427 US 160, 178 [1976]; Prince, 321 US at 166 ["(a)cting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways"]). The Supreme Court has stated that "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare" (Prince, 321 US at 167) specifically when it concerns the government's interest in the "moral, emotional, mental, and physical welfare of the minor" (Stanley, 405 US at 652 [internal quotation marks omitted]). Because the purpose of the juvenile curfew is, in part, to prevent victimization of minors during nighttime hours, it easily falls within the realm of the government's legitimate concern under Stanley.

Moreover, "to the extent that the curfew is enforced against minors moving about in public with no purpose or with an improper purpose" (Treacy, 91 P3d at 269), how it impinges on a parent's rights is surely less clear and more indirect.

Because the curfew is aimed primarily at minors, only peripher-
ally burdening parents' rights, the reflexive labeling of a
fundamental right, and accompanying analysis under strict
scrutiny, is inadequate for taking into account the complexities
and governmental concerns of this kind of regulation. As with
the minor's due process rights, we agree that a searching review
of the curfew is required but that a strict scrutiny analysis is
not. We conclude that intermediate scrutiny, and the rationale
of *Ramos*, are persuasive and we agree with the Appellate Divi-
sion that the curfew is constitutionally infirm.

### III

Under intermediate scrutiny, defendants must show that the
ordinance is "substantially related" to the achievement of
"important" government interests (see *Craig v Boren*, 429 US
190, 197 [1976]). Here, defendants assert that their governmen-
tal interest is to prevent minors from perpetrating and becom-
ing victims of crime during nighttime hours. While this is clearly
an important governmental interest, its expression does not end
the intermediate scrutiny analysis. In addition to identifying an
important governmental interest, defendants must show a
substantial nexus between the burdens imposed by this curfew
and the goals of protecting minors and preventing juvenile
crime. The Supreme Court has explained that although the
government need not produce evidence of this relationship to a
scientific certainty (see *Ginsberg*, 390 US at 642-643), the
"purpose of requiring [proof of] that close relationship is to as-
sure that the validity of a classification is determined through
reasoned analysis rather than through the mechanical applica-
tion of traditional, often inaccurate, assumptions" (*Mississippi
Univ. for Women v Hogan*, 458 US 718, 725-726 [1982]).

Quite simply, the proof offered by the City fails to support the
aims of the curfew in this case. As the Appellate Division
observed, "a common theme of the [affidavits of political of-
ficials and affidavits and reports of police officials] is that city
officials perceived a pressing need to respond to the problem of
juvenile victimization and crime as a result of the . . . tragic
deaths of three minors" (56 AD3d at 148). These incidents
would not have been prevented by the curfew because two of
the victims were killed during hours outside the curfew and the
third, as a result of being adjudicated a person in need of
supervision, was already subject to an individualized curfew.
Thus, these incidents do not provide the necessary nexus be-
tween the curfew and the ordinance's stated purpose.

Further, we conclude that the crime statistics produced by defendants do not support the objectives of Rochester's nocturnal curfew. Although the statistics show that minors are suspects and victims in roughly 10% of violent crimes committed between curfew hours (11:00 P.M. to 5:00 A.M.), what they really highlight is that minors are far more likely to commit or be victims of crime outside curfew hours[5] and that it is the adults, rather than the minors, who commit and are victims of the vast majority of violent crime (83.6% and 87.8% respectively) during curfew hours. The crime statistics are also organized by days of the week and despite that minors are 64% to 160% more likely to be a victim and up to 375% more likely to be a suspect of violent crimes on Saturdays and Sundays as compared to a given weekday, surprisingly, the curfew is less prohibitive on weekends. We also note that the methodology and scope of the statistics are plainly over-inclusive for purposes of studying the effectiveness of the curfew.[6]

To be sure, minors are affected by crime during curfew hours but from the obvious disconnect between the crime statistics and the *nighttime* curfew, it seems that "no effort [was] made by the [City] to ensure that the population targeted by the ordinance represented that part of the population causing trouble or that was being victimized" (*Ramos*, 353 F3d at 186). If, as the dissent argues, it is enough that from 2000 to 2005 a number of juveniles were victimized at night, then the same statistics would justify, perhaps even more strongly, imposing a juvenile curfew during all hours outside of school since far more victimization occur during those hours.

Nor can defendants simply rely on the studies and statistics of other municipalities with juvenile curfews without showing how the decrease in juvenile crime in those other cities is pertinent to Rochester. Without support from the City's own empirical data, we conclude that the justifications made by the Mayor and the Chief of Police for the nighttime curfew, based primarily on opinions, are insufficient since they do not show a

---

**5.** Looking at the hourly breakdown of minors as crime suspects and victims, more than three quarters (75% to 86%) of all crimes that minors commit and are victims of take place during non-curfew hours.

**6.** For tallying the number of crimes committed by minors, the statistics include minors from ages "0-17" notwithstanding that the curfew does not apply to 17 year olds. Although the curfew only applies to minors in public areas, the statistics provide no indication of where the crimes counted took place (i.e., whether on private or public property).

substantial relationship between the curfew and goals of reducing juvenile crime and victimization during nighttime hours.

We also conclude that the curfew imposes an unconstitutional burden on a parent's substantive due process rights. The City asserts that the ordinance promotes "parental supervision" of minors (Rochester City Code § 45-1 [B]). But the curfew fails to offer parents enough flexibility or autonomy in supervising their children (cf. Qutb, 11 F3d 495-496 [exception for minor being on errand for parent]). Indeed, an exception allowing for parental consent to the activities of minors during curfew hours is of paramount importance to the due process rights of parents. "The . . . notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition" (*Hodgson v Minnesota*, 497 US 417, 446-447 [1990]). If a parental consent exception were included in this curfew, it would be a closer case—courts have upheld curfews having, among other things, such an exception as only minimally intrusive upon the parent's due process rights (*see e.g. Treacy*, 91 P3d at 258; *Hutchins*, 188 F3d at 535; *Schleifer*, 159 F3d at 851-852; *Qutb*, 11 F3d at 490).

It is puzzling that the City purported to rely on curfews from other municipalities in the adoption of what was claimed to be a "similar" curfew ordinance yet failed to include the critical exceptions which supported the constitutionality of those other curfews.[7] For example, in *Hutchins*, the court reasoned that the District of Columbia curfew, with exceptions for parental consent, actually enhanced parental authority rather than challenged it (*see Hutchins*, 188 F3d at 545) and in *Qutb*, the court found that the broad exceptions in a Dallas, Texas curfew only minimally intruded into the parents' rights (*see Qutb*, 11 F3d at 495-496). But the Rochester curfew "does not allow an adult to pre-approve even a specific activity after curfew hours unless a custodial adult actually accompanies the minor. Thus, parents cannot allow their children to function independently at night, which some parents may believe is part of the process of growing up" (*Nunez*, 114 F3d at 952). Consequently, we conclude

---

7. Many of the cases cited by defendants which upheld the constitutionality of a curfew have three exceptions: (1) where the minor is on an errand at the direction of the parent, (2) where the minor is on the sidewalk that abuts the minor's or the next-door-neighbor's residence, and (3) where the minor is generally exercising First Amendment rights (as opposed to being in public specifically for the exercise of such rights) (*see Treacy*, 91 P3d at 258; *Hutchins*, 188 F3d at 535; *Schleifer*, 159 F3d at 851-852; *Qutb*, 11 F3d at 490).

that the challenged curfew is not substantially related to the stated goals of promoting parental supervision.

Accordingly, the order of the Appellate Division should be affirmed without costs.

GRAFFEO, J. (concurring). I vote to affirm because I conclude that the City of Rochester's juvenile curfew ordinance must be invalidated since the law conflicts, in part, with the Family Court Act. I further believe that the objectionable portion of the curfew law cannot be severed from the remainder of the ordinance and, consequently, the ordinance is invalid in its entirety.

Rochester's juvenile curfew ordinance specifies that children under the age of 17 cannot be in a public place between 11:00 P.M. and 5:00 A.M. Sunday through Thursday and from 12:00 A.M. to 5:00 A.M. on Friday and Saturday. There are delineated exceptions to the curfew, as set forth by the majority, where the minor can demonstrate that his or her conduct was covered by an exception. In drafting the curfew statute, the City Council decided that a minor who breaks curfew commits a violation as defined in the Penal Law. Under section 10.00 (3) of the Penal Law, a violation is an offense punishable by up to 15 days in jail. The curfew ordinance authorizes a police officer to "detain" or "take a minor into custody" if the officer reasonably believes that the minor has violated curfew and that none of the enumerated exceptions to the curfew restrictions apply (Rochester City Code § 45-6 [B]).

The State Constitution's "home rule" provision (art IX, § 2) "confers broad police power upon local government relating to the welfare of its citizens" (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987], *affd* 487 US 1 [1988]). This grant of authority includes the ability of a municipality to enact local laws regarding the "protection, order, conduct, safety, health and well-being of persons or property" within its borders (NY Const, art IX, § 2 [c] [ii] [10]; *see* Municipal Home Rule Law § 10 [1] [ii] [a] [12]). There are, however, important limitations on municipal police powers (*see New York State Club Assn. v City of New York*, 69 NY2d at 217). First, under the doctrine of conflict preemption, a "local government . . . may not exercise its police power by adopting a local law inconsistent with constitutional or general law" (*id.*). Second, under the doctrine of field preemption, a municipality "may not exercise its police power when the Legislature has restricted such an exercise by preempting the area of regulation" (*id.*; *see e.g.*

*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]). Field preemption may occur by express legislative direction or may be "implied from a declaration of State policy by the Legislature . . . or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area" (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 105 [1983]).

Nothing in the laws of this State indicates that the Legislature intended to prohibit municipalities from enacting juvenile curfews. Through the exercise of its police powers, a municipality may be able to justify the need for a juvenile curfew as a matter of permissible local concern. A curfew that is designed to reduce juvenile crime and victimization has "some fair, just and reasonable connection" to the promotion of the safety and welfare of vulnerable minors (*People v Bunis*, 9 NY2d 1, 4 [1961] [internal quotation marks omitted]). Clearly, the City of Rochester was motivated by laudable public safety concerns in attempting to get children off the streets late at night and into the safety of their homes.

But the curfew ordinance in this case raises a conflict preemption concern because the Family Court Act limits the instances when police can take children into custody. Section 305.2 (2) of the Family Court Act specifies that a police officer "may take a child under the age of sixteen into custody without a warrant in cases in which he may arrest a person for a *crime* under article one hundred forty of the criminal procedure law" (emphasis added). The term "crime" includes only misdemeanors and felonies, not violations (*see* Penal Law § 10.00 [6]). An infraction of the Rochester ordinance results in a "violation," punishable by up to 15 days in jail. Because a violation is not a "crime" for the purposes of section 305.2 (2), it necessarily follows that the constraints of Family Court Act § 305.2 prohibit the City of Rochester from authorizing the custodial detention of children aged 15 and under (*see Matter of Victor M.*, 9 NY3d 84, 87 [2007]; *Matter of Michael G.*, 99 Misc 2d 699, 701 [Family Ct, Rockland County 1979]). Based on conflict preemption principles, this provision of Rochester's curfew ordinance contradicts the Family Court Act and is therefore invalid.*

---

* The dissent concludes that there is no preemption problem. But this ignores the fact that a curfew infraction is a "violation" as that term is defined in the Penal Law, thereby authorizing the possible imposition of a sentence of up to 15 days in jail for a minor who breaks curfew.

The City of Rochester responds that its ordinance does not violate state law because it merely authorizes the police to engage in the "temporary detention" of a child, not to make an arrest. Semantics aside, the reality is that the ordinance permits a police officer to take custody of a minor, perhaps handcuff the offender, conduct a pat-down search (which could lead to the discovery of illegal contraband or a weapon), place the child in the back of a police car and transport the child to a detention facility. This, in my view, bears all of the hallmarks of a traditional arrest, not some short-term custodial intervention conducted solely for the safety and welfare of the child detained. And the punishment that can be inflicted for a violation of Rochester's curfew ordinance makes it easily distinguishable from *Matter of Shannon B.* (70 NY2d 458 [1987]), which upheld the authority of a police officer to detain a truant student, because truancy, unlike a violation of Rochester's curfew law, is not punishable by incarceration.

Nor is it possible to sever the offending provision of the ordinance from the remainder of the law. Under our traditional severability analysis, the

> " 'question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots' " (*CWM Chem. Servs., L.L.C. v Roth*, 6 NY3d 410, 423 [2006], quoting *People ex rel. Alpha Portland Cement Co. v Knapp*, 230 NY 48, 60 [1920], *cert denied* 256 US 702 [1921]).

In conducting this review, we first examine

> "the statute and its legislative history to determine the legislative intent and what the purposes of the new law were, and second, an evaluation of the courses of action available to the court in light of that history to decide which measure would have been enacted if partial invalidity of the statute had been foreseen" (*CWM Chem. Servs.*, 6 NY3d at 423, quoting *Matter of Westinghouse Elec. Corp. v Tully*, 63 NY2d 191, 196 [1984]).

Rochester's curfew ordinance does not contain a severability provision and nothing in the record before us indicates that the City Council considered this issue. From a practical perspective, severing the provision of the law that conflicts with the Family Court Act would make the curfew apply only to persons who are 16 years old. It is unlikely that the City of Rochester was interested in such a limited curfew, especially since the enactment of the ordinance was motivated in significant part by the murders of three local children, all of whom were under the age of 16. And restricting the curfew only to 16 year olds would result in a law that covers a much smaller percentage of the minors that the City Council was seeking to protect. I therefore conclude that the objectionable portion of the ordinance cannot be severed and Rochester's curfew law is void in its entirety.

PIGOTT, J. (dissenting). At community meetings addressing violent crime in the City of Rochester in the mid-2000s, the Chairman of the City Council's Public Safety Committee was frequently asked by members of the public about the feasibility of a curfew in that city. The discussions occurred in the wake of three killings of children in Rochester, all of which occurred late at night. The councilman traveled to Minneapolis, accompanied by two Rochester police commanders, to investigate the curfew in place there. The Rochester Chief of Police concluded, after meetings with the police commanders and other staff, that a curfew ordinance such as the one successful in Minneapolis would be an effective tool for preventing juveniles from committing, or becoming the victims of, nighttime crime. Public hearings were held, and the City Council received a large quantity of information concerning curfews implemented in other U.S. cities. The Mayor of Rochester, a former Rochester police chief, strongly advocated passage of a curfew ordinance.

In 2006, the Rochester City Council adopted a curfew ordinance, codified as chapter 45 of the Municipal Code of the City of Rochester, which took effect on September 5 of that year. The curfew is applicable—in "any public place" in the City of Rochester—to persons under the age of 17. It applies between the hours of 11:00 P.M. and 5:00 A.M., except that it does not apply until midnight on Friday and Saturday nights. First introduced as a three-month pilot program, the Rochester curfew has been extended several times, most recently to December 31, 2009.

The many exceptions built into the curfew ordinance and the methods of its application are described in the opinion above

(*see* majority op at 41-42). It is worth adding that a Rochester Police Department General Order provides that the "location designated by the Chief of Police" referred to in the ordinance (*see* Rochester City Code § 45-6 [C]) is "a curfew facility designated by the Chief of Police," where police will assist staff to notify the minor's parent or guardian of the minor's location, with a view to reuniting the two (*see* Rochester Police Department General Order 425). The designated curfew center is at Hillside Children's Center, in Rochester.*

With this background in mind, I turn to the constitutional due process challenges that are the basis for the majority opinion. The majority begins by discussing the "substantive due process rights of minors to enjoy freedom of movement" (majority op at 44). Initially, it is not clear whether the majority is invoking the constitutional right to travel (*see e.g. Saenz v Roe*, 526 US 489 [1999]; *Shapiro v Thompson*, 394 US 618 [1969]) or "the freedom to loiter for innocent purposes . . . protected by the Due Process Clause" (*Chicago v Morales*, 527 US 41, 53 [1999]; *see Memorial Hospital v Maricopa County*, 415 US 250, 255-256 [1974] [observing that the right to travel cannot simply mean the right to movement and declining to decide whether the right to interstate travel recognized in *Shapiro* has an analogue in intrastate travel]). But this distinction is of no consequence here because, as the majority notes, the critical question is whether the fundamental right of adults to free movement extends to unsupervised minors.

The majority appears to accept the arguments that recently led the United States Court of Appeals for the District of Columbia Circuit to conclude that children have no fundamental right to free movement. "[I]t would be inconsistent to find a fundamental right here, when the [Supreme] Court has concluded that the state may intrude upon the 'freedom' of

---

* I cannot accept the concurring view that taking a minor to the curfew center "bears all of the hallmarks of a traditional arrest" (concurring op at 53) and that the ordinance therefore violates Family Court Act § 305.2 (providing that warrantless arrest of a juvenile is authorized only in cases where an adult could be arrested for a crime). The temporary detention of a juvenile until a responsible adult takes charge of him—authorized by an ordinance enacted for the minor's protection, rather than prosecution—is within the scope of a municipality's police power (*see generally Matter of Shannon B.*, 70 NY2d 458, 462-463 [1987]) and not prohibited by Family Court Act § 305.2. Moreover, I reject the idea that the City of Rochester could make an invalid curfew valid simply by repealing the language stating that breaking curfew is a "violation."

juveniles in a variety of similar circumstances without implicating fundamental rights" (majority op at 46, quoting *Hutchins v District of Columbia*, 188 F3d 531, 539 [DC Cir 1999]). But instead of following this principle to its logical conclusion and applying a rational basis standard of review in assessing plaintiffs' free movement challenge, the majority selects the intermediate scrutiny standard for the question-begging reason that "courts have found that intermediate scrutiny is better suited to address the complexities of curfew ordinances" (majority op at 47).

The Supreme Court has observed that "unemancipated minors lack some of the most fundamental rights of self-determination—including even the right of liberty in its narrow sense, *i.e.*, the right to come and go at will" (*Vernonia School Dist. 47J v Acton*, 515 US 646, 654 [1995]). Here the law mirrors common sense. "Our society recognizes that juveniles in general are in the earlier stages of their emotional growth, that their intellectual development is incomplete, that they have had only limited practical experience, and that their value systems have not yet been clearly identified or firmly adopted" (*Schall v Martin*, 467 US 253, 265-266 n 15 [1984], quoting *People ex rel. Wayburn v Schupf*, 39 NY2d 682, 687 [1976]). Because of the immaturity and consequent vulnerability of children, "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults," even where the freedom that is curtailed is one that would be constitutionally protected were the child an adult (*Prince v Massachusetts*, 321 US 158, 170 [1944]).

Even where constitutionally protected freedoms of choice are implicated,

> "[s]tates validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences . . . [because] during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them" (*Bellotti v Baird*, 443 US 622, 635 [1979]).

In other words, because children often lack the capacity to make important decisions for themselves, "[t]hey are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae*. In this

respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's *parens patriae* interest in preserving and promoting the welfare of the child." (*Schall*, 467 US at 265 [internal quotation marks and citations omitted].) All states limit children's freedom of movement by requiring them to attend school for much of every weekday—a requirement never thought to call for either strict or intermediate scrutiny. As the Supreme Court has succinctly expressed it, "juveniles, unlike adults, are always in some form of custody" (*Reno v Flores*, 507 US 292, 302 [1993], quoting *Schall*, 467 US at 265).

These well-established premises of constitutional jurisprudence lead to the conclusion that the fundamental right to travel or movement does not extend to unsupervised minors. Because parents have the right to control or forbid children's travel, there can be no such thing as a child's fundamental right to free movement. Quite simply, children do not have the right to wander the streets freely at night. Because the curfew ordinance does not impinge on any cognizable constitutional right of minors, its restriction of minors' movements should therefore be subject to rational basis review (*see Ramos v Town of Vernon*, 353 F3d 171, 190-191 [2d Cir 2003, Winter, J., dissenting]).

On the other hand, the majority's choice of intermediate scrutiny to evaluate plaintiffs' assertion that the curfew ordinance violates the substantive due process rights of *parents* to make decisions concerning the care, custody and control of their children makes sense (*see* majority op at 47-48). The majority apparently does not dispute that preventing minors from committing or becoming the victims of nighttime crime is an important government interest (*see* majority op at 48). The only remaining question then is whether the curfew ordinance is substantially related to this important objective. I believe it is.

The record contains extensive affidavits of public officials who were involved in the adoption of the curfew ordinance, and the affidavits and reports of experienced police officials responsible for its enforcement, which describe the considerable amount of investigation and research that was carried out before the City Council adopted the ordinance. The record also contains crime statistics for the City, and information concerning the implementation of similar curfews in other municipalities. The decision to enact the curfew, while based in part on objective data, was also based in substantial part on the subjective judgment of experienced civic leaders, who believed the ordinance to be the

best way of dealing with a very troubling problem. Their judgment is, in my opinion, entitled to considerable deference. The majority gives it none.

Instead, the majority focuses on the statistics, but does so in a selective manner. It does not mention the statistics which demonstrate that between 2000 and 2005 most of the 13 juvenile murder victims in Rochester would have been in violation of the ordinance at the time of the murders. Nor does it mention that 45% of homicides in Rochester occurred during the curfew hours, a surprisingly high percentage given that the curfew hours make up less than 25% of the hours in a week.

The majority casts a skeptical eye on the statistics, writing that they show "that minors are far more likely to commit or be victims of crime outside curfew hours and that it is the adults, rather than the minors, who commit and are victims of the vast majority of violent crime . . . during curfew hours" (majority op at 49). Here, I respectfully suggest, the majority jumbles together two platitudes. Of course minors are more likely to commit or be victims of crime outside curfew hours. For one thing, the curfew hours comprise only 40 out of the 168 hours in a week. As to the likelihood of becoming crime victims, most children are at home during the curfew hours, as the defendant Mayor noted. But it certainly does not follow that a child who goes out at night is less likely to become the victim of a crime than one who goes out during the day. Again, it is completely unsurprising that adults commit and are victims of most crimes during curfew hours. Adults commit more crimes than children at all hours. Indeed, this may simply be an instance of the general truth that adults, who make up some three quarters of the population, are more likely to do anything.

From these platitudes, the majority infers a "disconnect between the crime statistics and the *nighttime* curfew . . . [N]o effort [was] made by the [City] to ensure that the population targeted by the ordinance represented that part of the population causing trouble or that was being victimized" (majority op at 49, quoting *Ramos v Town of Vernon*, 353 F3d 171, 186 [2d Cir 2003] [internal quotation marks omitted]). But here, under the guise of assessing whether the curfew ordinance is substantially related to a government objective, the majority essentially withdraws its earlier concession that protecting minors from becoming the victims or perpetrators of crimes is an important government interest. In essence, the majority is asserting that if adults commit and become victims of more crimes than

children, then protecting children from crime cannot be an important city objective, and that if more crimes are committed during the day than at night, then preventing nighttime crime cannot be an important city objective. The problem with that reasoning is obvious.

Putting aside the Rochester crime statistics, which suggest that a significant proportion of violent crime victims in that city are children, I do not believe that it is the judiciary's place to decide that protecting even a small number of minors from crime is an unimportant objective. I would have thought that protecting children from becoming the victims or perpetrators of violent crime is one of the most important goals a municipality could try to achieve, especially in the wake of a series of nighttime murders of minors.

Turning to plaintiffs' challenge based on parental authority, the majority observes that this would be a closer case if the curfew had included an exception for parental consent (majority op at 50), a critical "errand" exception present in curfew ordinances upheld in Anchorage, Alaska (*Treacy v Municipality of Anchorage*, 91 P3d 252 [Alaska 2004]), the District of Columbia (*Hutchins*), Charlottesville, Virginia (*Schleifer by Schleifer v City of Charlottesville*, 159 F3d 843 [4th Cir 1998]), and Dallas, Texas (*Qutb v Strauss*, 11 F3d 488, 490 [5th Cir 1993]). However, even without that exception, I believe that the curfew ordinance in Rochester is merely a minimal intrusion on parents' rights. If the standard of review in this regard were strict scrutiny, I might conclude that the ordinance is not the least restrictive alternative means of achieving the City's purpose. But, applying intermediate scrutiny as the majority professes to, I believe that the curfew—which contains exceptions for minors who are accompanied by a parent, guardian or other responsible adult, those engaged in lawful employment or en route to or from such employment, those facing emergency circumstances, those who are "going to, attending, or returning home from an official school, religious, or other recreational activity sponsored and/or supervised by a public entity or a civic organization," those who are in a public place "for the specific purpose of exercising fundamental rights such as freedom of speech or religion or the right of assembly protected by the First Amendment of the United States Constitution or Article I of the Constitution of the State of New York," and those engaged in interstate travel—is narrowly tailored to serve its important government purpose of preventing juvenile crime (Rochester City Code § 45-4).

I do not believe that the Rochester city ordinance—replete as it is with exceptions guiding the conduct of police officers taking minors into what the majority concedes is protective custody (majority op at 42 n 2)—violates minors' rights under the Federal or State Constitution. Equipped with a parental consent exception, I think it might have been a model city curfew. It is regrettable that a curfew was determined to be necessary in Rochester; but it is equally regrettable if this Court prevents Rochester from implementing a reasonable plan to protect its youth.

For these reasons, I respectfully dissent.

Chief Judge LIPPMAN and Judges CIPARICK and READ concur with Judge JONES; Judge GRAFFEO concurs in result in a separate opinion; Judge PIGOTT dissents in another opinion in which Judge SMITH concurs.

Order affirmed, without costs.